Judge Underwood
delivered the opinion of the court.
Rice instituted an action of trespass, quare clausum fregit, against Reed and others, and gave in evidence, that they came to the place of bis residence and seized and carried a^ay sundry slaves there found.
The defendants justified upon the following grounds, set: Rerry, administrator of Hamilton, obtained a search warrant, directed to the sheriff or any constable of Bath county, requiring the officer to search for and take the slaves alleged to have been stolen, if to be found in the possession of Rice, and to¡ bring him and them before the justice w'ho issued the warrantor some other. The‘warrant was placed in Reed’s hands, he being a constable. He summoned the other defendants, Berry excepted, to go with him to execute the warrant. Reed, Berry and the other defendants, went to the residence of Rice, and seized the slaves and took them, but did not take Rice. The defendants insist they did no more than was their duty for the purpose of executing the warrant.
These facts were set forth in appropriate pleas. Rice admitted the warrant in his replications, and denied the residue of the justification relied on? Issue was also made upon the plea of not guilty. Upon the trial the warrant was read and evidence given on the part of the defendants, conducing to show that Reed, as constable, summoned the defendants, except Berry, to assist him, and that he and they, with Berry, went to the residence of Rice, there found the slaves mentioned in the warrant, took them and carried them before a justice of the peace. The wife and sister of Rice seized some of the ne-groes, who were taken from them; they screamed, and the scene was one of some confusion. It lasted not more than an hour.
The evidence being closed, on both sides, ihe court on the application of the plaintiff’s counsel, instruct *45 ed the jury that the search warrant was illegal and afforded no defence to the defendants. Whether the court was right, constitutes the main question in the record, for our decision. The warrant issued, upon information given, on oath, by the defendant Berry, that the slaves, consisting of a woman and four children, had been stolen and carried away from the residence of his intestate, and that he believed they were, at the date of the warrant, in the possession of Rice. The slaves were described by names and age, in the warrant, with the exception of an infant child. The mandatory part of the warrant was in these words: “These are, therefore, in the name of the commonwealth, to command you to search for and take the said described slaves, if they be found in said John M. Rice’s possession, and bring him, the said Ripe, together with the said slaves, before me,” &c.
The 4th article of the amendments to the constitution of the U. S.intended to operate upon the government of the U. S. not of the states.
To the validity of a search warrant, description of place, person, and things, is requisite.
It is contended that the warrant is void, because it does not describe the place to be searched. The 4th article of the amendments to the constitution of the United States, is relied on to show that the place to be searched ought tobe described. We are of opinion that the article referred to, has no application to this case, and that it cannot affect proceedings under the authority of the states. It was not adopted as an amendment to the constitution of the United States, with the intent to restrict the powers of the states, but to limit the power of the United States, and to prescribe fixed rules relative to searches and seizures, under the authority of the national government,
The legality of the warrant, in the present case, must be tested, exclusively, by the constitution and laws of this state. The 9th section of the 10th article of the constitution of Kentucky, does not require a description of the place to be searched, in the same language, or-so explicitly as is required by the constitution of the United States; yet we believe that the place to be searched is required to be described, by the constitution of Kentucky. The language is, “that no warrant to search any place or to seize any person or things, shall issue, without des *46 cribing them, as nearly as may be.” The place, the person and the things, should all be described. The form of the warrant, as given in (he Kentucky Justice,, page 200, which we approve, and the'preceeding doctrines, pages 198 and 1.99, collected from Hale’s pleas of the Crown and East’s crown law, show that the place should be described» The proceedings upon search warrants, should be strictly legal, for there is not a description of process known to the law, the execution of which, is more distressing to the citizen. Perhaps there is none which excites such intense feeling, in consequence_of its humiliating and degrading effects.
He who acts in good faith, upon the command of an officer, to aid in the execution of process, may justify, altho> the process may not be regular and valid; but he who acts officiously must shew a valid process.
The warrant, in this case, does not describe the place to be searched. It refers to the property as in the possession of Rice. We cannot perceive from that, what places the officer was authorized to search, or what places he might not search. His authority could not be limited to any one place, and if it be an authority at all, it must amount to authority for searching all places in which Rice might have the slaves Jcept, in his possession. This is too general to meet our ideas of the law, and therefore, we are of opinion that the warrant, upon its face, is defective and, illegal.
But here another question arises, admitting the-warrant to be illegal, were the individuals summoned-by the officer, to assist in its execution, bound to take notice of its illegality, and to refuse giving their aid1, or were they justifiable in obeying his commands,, without enquiring whether his authority was legal or illegal. The right and power of an officer to summon the citizen to aid ih the execution of precepts to him directed, is highly necessary, if not indispensable tq the well being of society. If all those summoned had to examine and judge of the legality of the process, and then act upon their own responsibility, this necessary power in the officer would, in practice, be paralized in a great degree. It is laid down in Bacon’s Abridgement, title trespass, 610, that “every person who has assisted in the execution of a writ of fieri facias must, if he justify in an action of trespass, under the writ, unless he acted by the com- *47 ftiand or at the request of the sheriff or bis officer* show the judgment upon which it issued; for it he acted officiously, it was incumbent upon him to take care that the judgment was regular. Butif a sheriff or his officer, or a person acting by the command or at the request of the sheriff or his officer, justify in this action, under a writ of fieri facias, it is hot necessary for either of those to show the judgment upon •which the writ issued; because the writ was a sufficient justification to every one of these, although the judgment was not regular.”
It requires but a trivial extension of this doctrine, to exonerate those from actions of trespass, who act in good faith, when commanded or requested by art officer, in assisting to execute process which may not be regular. There is something which instantly strikes the moral sense, as being wrong, when told that a citiken is regarded a trespasser, for conscientiously aiding to execute the law, as he conscientiously believed at the time. If officiously, he undertakes to do it, then he puts his conduct upon his own judgment, and if that deceives,he is responsible; but if he acts under the Command of another, and that other, in cases of the kind, may have lawful authority to command him, then we think he ought not to be responsible. In such cases, the citizen, obeying the officer, should be looked upon in the light of a servant, acting by compulsion, and the party injured should seek redress against the officer and those who act “officiously.” Under this view, we think the instruction of the court was calculated to mislead the jury in respect to the defendants, who had been summoned by the officer, and ought not to have been given in respect to them; but as it relates to Berry and Reed, we see nothing objectionable in it.
The deed from Fletcher was not evidence, unless it had been connected with title, derived from the commonwealth. Had the title been traced and shown, it would have been competent to use the deed for the purpose of showing that the defendant in error had not possession of the locus in quo. Showing a complete title in Jesse Rice, and his residence on the land, might show that John M. Rice was not possessed *48 and'tbereby his action of trespass, guare clausemfirigit* might be defeated.
Haggin and Loughborough, for plaintiffs; T. Ts Crittenden, for defendants-.
For the error in the instruction, the judgment of the circuit court is reversed, and the cause remanded for a new trial, not inconsistent with this opinion.
The plaintiffs must recover their costs.