## Case No. 5,183.

### GALA PLAID.

[Brown, Adm. 1.] [1]

District Court, D. Michigan. Feb., 1859.

Jos. Miller, Dist. Atty., for the United States.

Alfred Russell, for claimant.

WILKINS, District Judge. The libel in this case embraced a large quantity of merchandise seized by the direction of the collector of the port of Detroit, in June 1857. The articles enumerated in the libel filled some twenty-two boxes, and consisted of gala plaid, merino. silks, dress goods, flannel, edging, muslin, lawn, silk veils, &c., in all numbering, in various quantities, some fifty different pieces and qualities of fancy merchandise of the value of about $1,000. The goods were all claimed by one John Larkin, who, with his family, emigrated to this country from England, in October, 1856.

The issue joined in the case was tried by a jury on the 14th of July, 1858, a little over a year after the seizure, and as appears by the record, no other testimony was introduced than that of Thomas Thayer, and Mary Ann Larkin, the daughter of the claimant. The former was the appraiser, called only to the identification of the articles.

The latter stated positively that all the goods enumerated in the libel were purchased from one Jackson, residing in a certain street in the city of New York, and as each article enumerated in the libel was separately called over by the district attorney, distinctly averred that the same was bought in New York, and she being the only witness

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

for the government as to the fact of importation, the district attorney abandoned the prosecution. The jury gave a verdict that the allegations of the libel were not sustained, acquitting the goods, whereupon the court decreed a dismissal of the libel and a restitution of the property seized.

On the succeeding day a motion was made by the district attorney, in behalf of the collector, for a certificate of probable cause, under the acts of congress of 1799 [1 Stat. 627] and 1807 [2 Stat. 422]. The argument of the same was, by the stipulation of the proctors, postponed until the first week in November.

The practice of this court has generally been, on releasing after a hearing the property seized, to direct, with the decree dismissing the libel, this certificate of protection to the officer if the evidence warranted the presumption of a reasonable suspicion on his part that the goods had been illegally brought into the United States: the exoneration of this officer being placed by the law on the fact that, although the evidence did not warrant condemnation, yet there were sufficient circumstances disclosed to justify the seizure.

In this case the claimant was not called upon for any exculpatory evidence. The case was abandoned. The proctor of the claimant and the district attorney of the United States stipulated at a future day to present to the consideration of the court the present motion—a practice which does not meet the sanction of the court, which has led to much expense and confusion, and has only been tolerated with the view of doing justice to a public officer, who was not personally present at the seizure, and if any outrage was committed, either on the rights or feelings of others, is not at least morally amenable.

Had this course not been taken, I must have refused the certificate, for there was not, on the trial, a scintilla of evidence warranting suspicion.

When the motion came up for hearing, the district attorney offered in evidence the circumstances of suspicion upon which the collector directed the proceeding. This was objected to by claimant's counsel, on the ground that the trial was closed, and that it was not competent for the court on this motion to hear other proof, and that it was limited in the granting or refusing of this certificate to the testimony which had been submitted on the trial.

The testimony was heard under a reservation of the court, and after much consideration, I am satisfied that it was admissible at this stage of the proceeding, and on this motion, although the libel was dismissed and restitution decreed.

There is certainly nothing in the language of the statute that inhibits the motion being made subsequent to the rendition of the decree. In the case of U. S. v. Twenty-Six

Diamond Rings [Case No. 16,572], the motion was made on a day subsequent to the dismissal of the libel, and Judge Sprague, it would seem, granted the certificate upon evidence of a fact, which if offered, was not pressed during the trial, namely, the concealment of the rings by the passenger when the manifest was made containing similar articles by the same person.

The statute does not limit the evidence to that offered upon the trial. It declares if it shall appear to the court before which such prosecution has been had that there was a reasonable cause of seizure, the court shall cause a proper certificate or entry to be made thereof—that is, the fact is to be certified. The time when the application is to be made for such certificate is not determined, and it is not clearly inferable as the intent of the act that such certificate should be based exclusively on the testimony offered antecedent to the decree. Had the statute declared that the final decree should embody such certificate, then the court could hear no other evidence than that given on the trial; but, omitting so to enact, the inference is strong that the design of congress was to enable the collector to come in at any time after judgment has been given for the claimant, and procure from the court the certificate contemplated, on such a showing as he may be enabled to make.

The statute prescribes that the court shall cause a proper certificate to be given or entry to be made. The alternative is with the court to give the one or direct the other—and it is not, therefore, a necessary part of the record—not an essential journal entry, and consequently not a part of the original proceeding, unless the court so chooses to order.

To sustain the prosecution, the evidence is given to the jury, under the direction of the court, and it is the evidence upon which their determination is made; but whether or not the prosecutor had probable grounds for instituting a suit, is another question, and solely for the action of the court, which may proceed to hear the matter, either during the progress of the trial after the testimony is in, or subsequently, upon the application of the officer for leave to exhibit his grounds of suspicion. The only direction of the act being that the subject-matter excusatory of the officer, and protective of him against the action of any other judicial tribunal, is, that such excuse shall be judged of by the court before whom the prosecution is had.

In the case of U. S. v. The Forrester [Case No. 15,132], the court acted at once on the application of the district attorney, the proofs on the trial being conclusive upon the point.

The court holding then that this inquiry may be properly gone into after the prosecution has closed, will now inquire into the sufficiency of the excuse set up and proved by the collector. It is alleged on the part of the applicant for this certificate, that the circumstance of vending these goods in an obscure town, but sparsely inhabited, distant from any large village or city, and selling them at a low price, under the declaration by the claimant, repeatedly made to purchasers before seizure, that he had brought them from the old country, and paid duty only upon part of them, was sufficient to warrant his suspicion and his official action. And it is further alleged that the place of deposit and mode of sale confirmed the impression that they had been fraudulently brought into the country.

There can be no doubt that on this application the court is confined to the circumstances existing prior to the seizure. It is an application based on an acquittal. The prosecution has failed to establish the charge, and that trial is ended.

The property has been released and restored, and the issue determined. The court, then, is to hear the cause of seizure, and nothing else. The court may be satisfied, on the testimony adduced on the application, that the district attorney was misled in abandoning the prosecution, that his witness was guilty of perjury, and that, had all the facts been brought to the notice of the court, a decree of condemnation must have been rendered. But all this is of no avail, except so far as corroborative of the circumstances of suspicion which led to the seizure.

Furthermore, I am satisfied that the conduct of the officer in making the seizure, cruel, uncivil, oppressive or otherwise, with or without warrant, has nothing to do with the merit of this application. It presents a single question to the court, and when resisted, a single issue, and that is: What were the grounds of suspicion which led the collector to direct his deputy to seize the merchandise in question? Was the seizure malicious and groundless, or had the officer a reasonable warrant of suspicion, based on circumstances and facts which came to his knowledge and existed prior to his official action in seizing the goods?

By the act of 1799, § 68 [supra], when the collector has cause to suspect a concealment of smuggled goods in a dwelling-house, he is bound to make application under oath to a magistrate, and obtain a search warrant, which can only be executed in the daytime, in obedience to the constitutional injunction, forbidding unreasonable searches, and guaranteeing the security of private dwellings. A seizure at night is unreasonable and prohibited, and these provisions so essential to peace and safety are re-enacted in 1815 (3 Stat. 232).

But the mode pursued by the officer, and his official action upon his suspicions, have nothing to do with the question whether his suspicions were groundless or otherwise. If the collector, having a just and reasonable suspicion, acts without warrant, or on an

irregular warrant, or illegally in making the search at night, or oppressively in seizing what is not dutiable, such as articles of clothing, or commits a personal trespass, he certainly is amenable elsewhere to the parties injured, and is not protected by the certificate of the court, granted under the acts of 1799, 1807, or 1823 [3 Stat. 729].

Did I think so, I should be very loath to grant the certificate in this case. For although I am satisfied that the warrant is a genuine document, and not a forgery (as was supposed in the argument), yet I cannot sanction, by any act of mine, the conduct of Officer Cullen, in making an indiscriminate seizure of broadcloth and female chemises, of pantaloons, petticoats, French apparel, night-clothes, baby's clothes, &c., so completely stripping the apparel of the family that the children were left in nudity and the young women compelled to borrow from neighbors the requisite clothing for church.

Two exigencies are covered by the certificate: (1) The claimant cannot recover costs, although acquitted, because by his own conduct he misled the officer of the government. (2) He cannot recover damages in any action, because the proper tribunal determined that the officer was warranted in making the seizure. But, if the mode was unlawful and injurious, the certificate is but a blank piece of paper, as a shield of protection. The act of congress never designed to protect robbery, assault and battery, or midnight trespass under the cover of this certificate. It never designed to protect conduct forbidden by the statute itself. It means no more than this, that certain merchandise having been seized for a violation of the revenue laws, and that fact having been tried and the goods restored, the public officer had just grounds for his official action, and no costs are awarded to the claimant.

I recur then to the issue as stated, leaving with pleasure the outrageous conduct of the officer in performing his duty. In case of Locke v. U. S., 7 Cranch [11 U. S.] 339, decided as far back as 1813, Judge Marshall says that the term "probable cause," as used by congress, does not signify prima facie evidence, which, in the absence of exculpatory proof, would justify condemnation, but simply evidence of circumstances which warrant suspicion. And, at a later period, what constitutes probable cause, was held by Judge Story, in The Rover [Case No. 12,091], to be a question of law for the court,—in the facts exhibited justifying the officer.

And, as a question of law, the circumstances of each particular case must govern the court. In the case of The Friendship [Case No. 5,125], a doubt as to the construction of the law by the officer was held to be a reasonable cause for seizure. In The George [Id. 5,328], Judge Story defines "'probable cause' to import a seizure made under circumstances which warrant suspicion." And in the case of U. S. v. The Forrester [supra],

this court held that the circumstances which occurred when the vessel was unladen at the dock, of the captain calling in the presence of the revenue officer, the merchandise, "Port Sarnia stuff," warranted his seizure.

In the case of U. S. v. Twenty-Six Diamond Rings [supra], a very slight circumstance induced Judge Sprague to grant the certificate, namely, that the claimant was apprised of the fact that the diamond rings had been entered by him on his manifest. When the steamer came to their moorings at Boston, the revenue officer was notified, by the captain, that there had been a robbery on board, and no passengers were to land until a legal search had been made. The claimant came to the purser on the deck, and handed him a small parcel, containing the twenty-six rings, with a request to enter the same on the ship's manifest. This being in the presence of the revenue officer, he at once seized them. The claimant had previously entered on the manifest four cases of jewelry. The question was, had the twenty-six rings been concealed? The court dismissed the libel, but held that the claimant was apprised of the fact that there was a manifest in which he had caused similar goods to be entered, and that, although he had not actually concealed the goods in question, the circumstance was sufficient to warrant the suspicion of the officer.

What are the circumstances in this case, as proved, on which the collector acted?

The informer, J. H. Terry, states to him by letter of the 20th of June, 1857, that the claimant is selling, in the vicinity of Tecumseh, at his dwelling-house, a large quantity of fancy goods, in all of the value of about $1,000. That he and his daughter say, that they recently brought these goods from England, on a greater part of which they did not pay duty; that upon certain artificial flowers duty was paid, but no duty on the residue. That the claimant was an Englishman recently come into the country; that he kept no store, but had the goods stored away in the garret of a one-story house; and that he was personally present, and heard, with other witnesses, the statement that they had not paid duty on them. Now, if this statement has been made out by the proof, there was sufficient ground for the seizure.

Terry himself was put upon the stand, and testified—that he was at the place where these goods were sold; that they were kept in the garret of a one-story house; that they consisted of the articles enumerated in the libel; that he heard Mary Ann Larkin say, that they did not pay duty on all the goods, and would sell cheap; that they had brought over from England twenty-two cases; that they had only paid duty on the artificial flowers; and that the reason why they escaped paying duty on all was that the officer did not know that they had any other goods.

This statement is corroborated by the evidence of Cullen, as to the account given to

him by the claimant that the goods were brought from England, by the statement which he made to the collector himself when seeking the restoration of the property, by Holdrich, to whom claimant repeatedly said that the goods came from England, by Wheeler, who went to buy cloth, and to whom claimant said that he brought all the goods from England, and that he paid the duty only upon part, and by the affidavit of the claimant himself, made in October, 1857, in open court, when applying for the continuance of the cause, in which he solemnly states—"that he brought all the goods seized from Liverpool in the ship Bright, openly and without the least secrecy, and that he paid to the custom house officer at New York all the duties demanded, and that he could prove all these facts by his daughter Mary Ann and his fellow-passengers."

This affidavit was made on the 12th of October, 1857, and the daughter, as a witness on behalf of the government, swore on the trial, in July last, directly and particularly the reverse. One or the other is perjured. There is no room for charity, and the father's oath is supported by all the surrounding incidents of the case, by the declaration of the daughter to Terry, and by her testimony before the grand jury. It is true, the court must be governed on this application by the circumstances which led to the seizure; but the evidence of Cullen, Shoemaker, Holdrich and Wheeler, and the affidavit of the claimant are only used as corroborating, beyond all doubt, the testimony of Terry and the circumstances proved by him: That duty was not paid upon these goods, and that they could be sold cheap.

The circumstances of this case strongly illustrate the propriety of the ruling that the court should not, in all cases of seizure under the revenue laws, determine the propriety of the certificate on the facts elicited on the trial of the main issue.

Here the district attorney introduced only the evidence of the daughter of the claimant. Had he recollected, and called the attention of the court to this affidavit of John Larkin, the comparison between it and the barefaced, perilous, minute swearing of Mary Ann would have elicited from the court a course of procedure, calling peremptorily for the punishment of either the father or daughter for willful and corrupt perjury.

The court believed what appeared to be the frank statement of the woman, that each article was purchased in New York, and sympathized with the witness in the evident spoliation of part of her property, in a strange land, where she had sought a livelihood in the neighborhood of her relatives.

As the facts turn out, there should have been a condemnation. The proof then on file warranted it. The depositions of Dawson and Benedict, the custom house officers of New York, as to the non-payment of duty, the sworn avowal of John Larkin on file,

and the proof of his declarations by Cullen, Wheeler, and Holdrich, with Mary Ann's avowal, would have overwhelmed her statement in court, and caused a condemnation. Motion granted.