## Gracie vs. Morris.

In an action of trespass for breaking into the house of the plaintiff, and taking personal property, the plaintiff will not be permitted to give evidence of the taking of the property of a third person, of which he is neither in possession, nor has the right of possession.

If the process issued by a justice of the peace has been lost, secondary evidence is admissible to establish its existence and contents, where in an action of trespass for false imprisonment the defendant justifies the arrest under such process.

*Error to Jackson Circuit Court.*

Hon. WILLIAM C. BEVENS, Circuit Judge.

STILLWELL & WOODRUFF, for plaintiff.

Hon. THOMAS JOHNSON, Special Judge, delivered the opinion of the court.

This is an action of trespass. The declaration contains three counts, two for false imprisonment, and one for breaking into the dwelling house of the plaintiff and taking personal property, &c. The defendant, Grider, filed but one plea, which was the general issue. The defendant, Gracie, filed the general issue, and also a special plea of justification. The special plea sets up, that at the time the plaintiff was arrested on the State's warrant, she was suspected of having stolen and concealed goods and effects amounting to six hundred dollars, belonging to the estate of William H. Morris, deceased, of Jackson county, and that one Isaac Blakely, a lawful officer, had in his hands a writ issued in behalf of the State, by James H. Gray, a justice of the peace of said county of Jackson, commanding him

to arrest the plaintiff, and to take her before said justice of the peace, to be dealt with according to law; that in obedience to said writ, the plaintiff was taken and lawfully detained for the space of one week, and the defendant believing the plaintiff guilty of stealing the said goods and chattels of the said Morris, deceased, and in obedience to the command of the said Blakely, went upon the premises of the plaintiff, and assisted said officer in searching for said goods and chattels; that Blakely arrested the plaintiff by virtue of the writ, took her before the justice of the peace, and detained her a reasonable time for examination, which was lawful and just, &c., &c. The plaintiff entered her replication to Gracie's special plea of justification, to which he joined issue, all, in short, upon the record. The issues were submitted to a jury, who found Grider not guilty, and Gracie guilty, and assessed damages against him of six hundred dollars. During the progress of the trial, the defendant, Gracie, took seven bills of exceptions. It appears from the first bill of exception, that the plaintiff asked a witness named Blakely, if there was not a bureau in the house at the time of the alleged trespass, that belonged to Miss Elizabeth Barnes, to which he replied that there was, and that the plaintiff said that it and its contents belonged to Miss Elizabeth Barnes, who was not then at home, and further, that Miss Barnes was the daughter of the plaintiff; that she boarded and stayed with her mother, and had done so from that time till the time of testifying. And she further inquired of the witness, what was done with the bureau of Miss Barnes and its contents by the defendants, or either of them, to the answering of which, the defendant, John B. Gracie, objected, but being overruled he excepted. In his second bill, he objected to the testimony of the witness in respect of money that was found in the bureau of Miss Barnes. This was also permitted to go to the jury. The testimony objected to, and saved by these two bills, may well be considered together. Though the right of property may and often does come in controversy in this action, yet the gist of the action is the injury done to the plaintiff's possession. The

possession of the plaintiff may be actual or constructive. And it is constructive when the property is either in the actual custody and occupation of no one, but rightfully belongs to the plaintiff; or when it is in the care or custody of his servant, agent, or overseer, or in the hands of a bailee for custody, carriage or other care or service, as depository, carrier, borrower, or the like, where the bailee or actual possessor has no vested interest or title to the beneficial use and enjoyment of the property, but on the contrary, the owner may take it into his own hands, at his pleasure. Where this is the case, the general owner may sue in trespass, as for an injury to his own actual possession, and the proof will maintain the averment. The general property draws to it the possession where there is no intervening adverse right of enjoyment. And this action may also be maintained by the actual possessor, upon the proof of his possession de facto, and an authority coupled with an interest in the thing as carrier, factor, pawnee or sheriff. See 2 *Greenl. Ev.* 504–5; 2 *Saund·* 47; *Wilberforce vs. Snow; Colwell vs. Reeves,* 2 *Campb.* 577; 4 *Durnford and East, Ward vs. Mc-Cauley et al. p.* 490. Under the general issue, the plaintiff must prove, first, that the property was in his possession at the time of the injury, and this rightfully against the defendant, and secondly that the injury was committed by the defendant with force. The question to be determined is, whether the plaintiff proved such a possession, in herself, of the bureau and contents, as to entitle her to maintain the action for damages consequent upon their taking. The proof is that the bureau and its contents were in the house of the plaintiff at the time of the alleged trespass, but that they belonged to Miss Barnes, who was her daughter, and lived and boarded with her mother, but that she was absent from the house at the time. It is perfectly clear from this state of the case, that the plaintiff had neither a general nor special property in the bureau and its contents, nor indeed had she the possession of either. True it is, that they were in her house, but her daughter, who was owner, lived in the same house with her, and was, consequently, in the actual possession. The court

27

below, therefore, erred in overruling the objection of the defendant, and admitting the evidence. The next question is, whether the court below erred or not in rejecting secondary evidence to establish the existence and contents of the process under which the defendant, Gracie, sought to justify his acts. The justice who issued the writ, testified that he issued a search warrant against the plaintiff in the spring of 1856 or 1857, and that it was based upon the affidavit of Mrs. Gracie, wife of the defendant, that said warrant was returnable before him, as he believed, but that he had not seen it since he presided over the case, and also that he had made diligent search for it, but had not been able to find it. The constable who executed the warrant, testified that he had returned the warrant to the justice who issued it. The defendant also offered to prove other facts and circumstances, tending to show the loss of the process in question, all of which was refused by the court, and he excepted. The proof is ample to show that a search warrant was issued by the justice and executed by the constable, and returned, and that such warrant had been lost or mislaid. The case of *Fowler vs. Moore*, 4th Ark. Rep. 573, was an application to supply, by parol, a lost process. The Clerk of the Circuit Court proved the issuing of the process, and the sheriff, its service and return, more than thirty days prior to the first Monday of September, 1841, the time fixed by law for the holding of the Circuit Court, to which such writ was returnable, and at which time judgment was rendered. The clerk testified that the form of the writ furnished, was, to the best of his knowledge and belief, a true copy of the original, which was lost. The sheriff also proved that he believed the copy to be a true one. Upon this proof, the court below allowed the writ to be supplied. This court, in that case said : The inquiry now is, did the court below err in permitting the lost process to be thus supplied. This point is not wholly free of difficulty, but in looking into the adjudications upon this subject, we found several precedents where a lost process or exhibit in chancery may be proved by parol, and in like manner as was allowed by the court in this

instance.   It has been considered and treated as a mere ques-
tion of practice, in which the motives and temptations of official
impropriety have been weighed against the evidence of the lost
rights of suitors, and, therefore, as a matter of necessity, and to
prevent a failure of justice, the rule has been established that
such portions of lost records as process, and the like, may be
amended by substituting, upon sufficient evidence, a copy in lieu
of the original.   The principle here stated, does not conflict with
the doctrine laid down by the court in the case of *Smith vs.
Dudley, 2 Ark. 63.*   Where the record exists, if denied, it can
only be tried by inspection.   Its production is certainly indis-
pensable, so long as it is supposed to be in existence.   But if lost
or destroyed, it is then competent to prove its existence by a
sworn or authenticated copy.   The defendant, Gracie, exhausted
every means in his power to obtain the proof under which he
justified, but all to no purpose, and though there was no direct
proof as to the manner of its loss, yet it is perfectly clear to our
minds that it was not within his reach.   If a party in the situa-
tion of the defendant could not be permitted to introduce parol
evidence of the authority under which he acted, nothing could
be more perilous than to yield obedience to an officer in the
execution of the law.   He has no right to the possession or con-
trol of the paper, and it would be productive of the greatest
hardship and injustice, if he were left remediless in the event
of the negligence, misfortune or corruption of the officers who
are entrusted by the law with its safe keeping.   We are clear-
ly of the opinion, that if the defendant could prove the existence
and contents of a paper, which, if produced, would have been
a legal warrant for the part that he performed in the premises,
he ought to have been permitted to do so.   He offered the best
evidence of which the case was susceptible, as the justice who
issued, and the constable who executed it, necessarily must have
been more conversant with the facts sought to be established,
than any other persons.   We think, therefore, that the court
below also erred in refusing the testimony offered on this point.
In respect to the last exception, it is difficult to perceive how it

could affect the result.   The plea of justification was filed by
Gracie, and issue taken upon it.   True it is, that it was not
supported by proof, yet it was a part of the record of the case,
and of course a proper subject of comment, if the court below
in its sound discretion saw fit to permit it.

Let the cause be reversed and remanded, with instructions to
proceed according to law, and in accordance with this opinion.

Mr. Justice FAIRCHILD did not sit in this case.