**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-1418

FERNANDO M. SMITH; JAMIE CRABTREE; PRISTINE PRE-OWNED AUTOS, INC., a West Virginia corporation

Plaintiffs – Appellants,

v.

MICHAEL LEE TRAVELPIECE, sued in his individual capacity as a West Virginia State Police Officer

Defendant – Appellee.

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg.  Gina M. Groh, Chief District Judge.  (3:19-cv-00200-GMG)

Argued:  September 22, 2021                    Decided:  April 20, 2022

Before KING, THACKER, and RICHARDSON, Circuit Judges.

Affirmed by published opinion.  Judge Richardson wrote the opinion in which Judge King and Judge Thacker joined.

**ARGUED:**  Lonnie Carl Simmons, DITRAPANO BARRETT & DIPIERO, Charleston, West Virginia, for Appellants.  Michael Deering Mullins, STEPTOE & JOHNSON PLLC, Charleston, West Virginia, for Appellee.  **ON BRIEF:**  Katherine M. Smith, STEPTOE & JOHNSON PLLC, Martinsburg, West Virginia, for Appellee.

RICHARDSON, Circuit Judge:

Fernando M. Smith, Jamie Crabtree, and Pristine Pre-Owned Autos were the subjects of an unconstitutional search. Relying on the fruits of that search, prosecutors obtained grand jury indictments against Smith and Crabtree. After a court suppressed the evidence and dismissed the criminal charges against them, they sued the trooper who conducted the search under 42 U.S.C. § 1983. Because the facts alleged only state a Fourth Amendment claim for the unlawful search and seizure of their property, their claim accrued at the time of the search, and therefore this suit is untimely.

## I.      Background

After an alleged victim's complaints and information from a West Virginia Department of Motor Vehicles investigator, Police Trooper Michael Lee Travelpiece suspected Pristine Pre-Owned Autos was engaged in illegal business practices. He obtained a broad search warrant from a county magistrate judge to search Pristine's premises. He executed the warrant that same day, seizing business records, computer equipment, a vehicle, and other materials from Pristine.

Based on the evidence seized by Trooper Travelpiece, a local grand jury indicted Pristine's co-owners—Fernando M. Smith and Jamie Crabtree. These charges reflected allegations that they were selling salvage-title vehicles without disclosing the salvage-title status. Soon after the indictments, Smith and Crabtree were arraigned, pleaded not guilty, and posted a personal recognizance bond.

Smith and Crabtree later moved to suppress the evidence obtained from Trooper Travelpiece's search of Pristine. They claimed that the search warrant lacked probable

cause and was overbroad. And four years later, the state court agreed, suppressing all the evidence. The court held that Trooper Travelpiece's warrant application omitted material facts that undermined probable cause and made patently misleading representations. Having suppressed the evidence, the court dismissed the charges with prejudice.

Smith, Crabtree, and Pristine (collectively, "Plaintiffs") then sued Trooper Travelpiece in state court almost five years after the illegal search but just over a year after the court dismissed the criminal charges. In the suit, Plaintiffs asserted a § 1983 claim alleging that Trooper Travelpiece violated their constitutional rights.[1] After Trooper Travelpiece removed the case to federal court, the district court found the claim barred by the two-year statute of limitation. On appeal, Plaintiffs challenge that conclusion, arguing the district court erred in holding that the claim accrued at the time of the unlawful search and seizure and was therefore untimely. We review this challenge de novo, accepting the facts as alleged. *Covey v. Assessor of Ohio Cnty.*, 777 F.3d 186, 191–92 (4th Cir. 2015).

## II.    Discussion

Section 1983 provides a federal cause of action to redress constitutional harms committed under color of state law.[2] To define that cause of action, federal law derives

---

[1] Plaintiffs also asserted several state-law causes of action but have abandoned those claims on appeal.

[2] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

certain aspects from "the law of the State in which the cause of action arose." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). For other aspects, federal law looks generally to "common-law tort principles." *Id.* at 388.

Applying a § 1983 claim's statute of limitations requires examining both state law and general common law. State law determines the applicable term of limitations for a § 1983 claim. *Owens v. Okure*, 488 U.S. 235, 239, 249–50 (1989). As the claim here arose in West Virginia, West Virginia's two-year statute of limitations for personal injury actions applies. *See* W. Va. Code § 55-2-12(b).[3]

But general common-law principles, without reference to West Virginia's law, determine when the claim accrues and when the statute of limitations begins to run. *Wallace*, 549 U.S. at 388. Under those common-law principles, "it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (cleaned up).[4] This standard inquiry

---

[3] Section 1983 claims also borrow the applicable tolling rules from state law unless the tolling rule is "inconsistent with the Constitution and laws of the United States." *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 485 (1980). Plaintiffs have not argued that a tolling rule applies here.

[4] This Court has applied the discovery rule of accrual to § 1983 claims, holding that a plaintiff's cause of action does not accrue until the "plaintiff knows or has reason to know of the injury." *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975). We adopted that accrual rule in large part from the Supreme Court decision in *Urie v. Thompson*, 337 U.S. 163, 168–71 (1949), which adopted the discovery rule for claims under the Federal Employer's Liability Act. *See Cox*, 529 F.2d at 50. But in doing so, we lacked the Supreme Court's more recent guidance that the contours of a § 1983 claim depends on those common-law principles that were well settled in 1871. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019). And some authorities suggest that the discovery rule was not settled then. *See* Henry F. Buswell, *The Statute of Limitations and Adverse Possession* 295–96 (1889); H. (Continued)

requires determining when all the cause of action's elements are met, *see Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016), since only at that point is there a "complete and present" cause of action on which to file suit. But this "'standard rule' does not always control the start of the limitations period for a § 1983 claim." *Owens*, 767 F.3d at 389. When "the common law provides a distinctive rule for determining when the limitations period for a particular tort begins to run, a court must consider this refinement in determining when the limitations period for the plaintiff's analogous claim under § 1983 should commence." *Id.* (cleaned up).

To identify the elements and accrual rule for a § 1983 claim, we "look first to the common law of torts" to identify the most analogous tort. *Manuel v. City of Joliet*, 137 S. Ct. 911, 920 (2017). But to identify the most natural common-law analogy, "it is necessary to isolate the precise constitutional violation." *Baker v. McCollan*, 443 U.S. 137, 140 (1979); *see McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019). Only having isolated the precise constitutional violation may we identify the common-law cause of action that provides the "closest analogy." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). Once that common-law analogy is identified, the court incorporates its elements and accrual rules where consistent with "the values and purposes of the constitutional right at issue." *Manuel*, 137 S.Ct. at 921; *see Wallace*, 549 U.S. at 388–90 (incorporating the accrual rule

---

G. Wood, *A Treatise on the Limitation of Actions at Law and in Equity* 422 (John M. Gould ed., 3d ed. 1901). But we need not address this issue here as applying the discovery rule would not affect the outcome.

for false imprisonment); *Heck*, 512 U.S. at 483–87 (incorporating the favorable-termination element for malicious prosecution).

Thus, identifying when Plaintiffs' cause of action accrued requires that we first isolate the precise constitutional violation alleged. Plaintiffs' § 1983 claim focuses on an improper search warrant. The search warrant, it is alleged, was improper because the Defendant made false statements and material omissions in his affidavit in support of the warrant. Plaintiffs claim that this violated their right to be free from unreasonable searches and seizures under the Fourth Amendment and their right to due process under the Fourteenth Amendment.

These allegations directly implicate the Fourth Amendment. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation." U.S. Const. amend. IV. When an officer improperly obtains a search warrant using deceptive falsities or omissions and uses that ill-gotten warrant to search and seize property, the Fourth Amendment's right to be free from unreasonable searches and seizures is violated. *See Franks v. Delaware*, 438 U.S. 154, 155–56, 171 (1978); *United States v. Colkley*, 899 F.2d 297, 302 (4th Cir. 1990).[5]

---

[5] Though *Franks* referenced the Fourteenth Amendment as well, the substantive violation was the Fourth Amendment as the Fourteenth Amendment applied to incorporate that right against the states. *See United States v. Lull*, 824 F.3d 109, 115, 120 (4th Cir. 2016) (describing *Franks* as dealing with rights "under the Fourth Amendment, which appl[y] to the states through the Fourteenth Amendment").

Plaintiffs claim that the improper search warrant also violated their procedural due process rights under the Fourteenth Amendment. In short, they claim that Trooper Travelpiece's lies and omissions during the warrant process deprived them of the fair procedures that are required before a search and seizure of property can occur. But "[t]he Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases." *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975); *see City of W. Covina v. Perkins*, 525 U.S. 234, 246 (1999) (Thomas, J., concurring in the judgment) ("[W]e have never before suggested that procedural due process governs the execution of a criminal search warrant.").

Dressing a Fourth Amendment claim up in due process language does not transform it into a Fourteenth Amendment claim. *See Manuel*, 137 S. Ct. at 918–19 (holding that a Fourth Amendment detention claim cannot be "convert[ed]" into a due process claim); *Colkley*, 899 F.2d at 302 (refusing to import due process principles into the warrant-application proceeding).[6] One might just as well dress up any Fourth Amendment claim

---

[6] There are some Supreme Court cases that hold that due process provides additional requirements in limited circumstances. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 49–52 (1993) (discussing an area "beyond the traditional meaning of search or seizure" where the Due Process Clause adds requirements). For example, when "the Government seize[s] property not to preserve evidence of wrongdoing, but to assert ownership and control over the property" it "must comply with the Due Process Clauses of the Fifth and Fourteenth Amendments." *Id.* at 52. But those examples lie only at the edges of the Fourth Amendment's domain, and an unreasonable search to secure evidence, like this one, is at the very heart of it. In other circumstances, procedural due process imposes additional requirements, *Perkins*, 525 U.S. at 240 (holding that due process requires providing reasonable notice after seizure of property pursuant to a warrant), but (Continued)

this same way. When a police officer searches a suspect's home with no warrant, one might complain that the officer did not follow the procedures laid out in the Fourth Amendment requiring a warrant by oath or affirmation from an impartial judge. But no matter its dress, that is a Fourth Amendment unreasonable-search claim and not a due-process claim. So too here.

Nor do the allegations here implicate claims for improper detention or prosecution. *See Manuel*, 137 S. Ct. at 919; *Brooks v. City of Winston-Salem*, 85 F.3d 178, 182 (4th Cir. 1996). To raise those claims, Plaintiffs would have needed to allege Trooper Travelpiece acted improperly after the search. *See Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (noting that constitutional torts require both but-for and proximate causation and that "subsequent acts of independent decision-makers (*e.g.*, prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure."). Plaintiffs fail to allege Trooper Travelpiece infringed their constitutional rights after the search and seizure was complete. Trooper Travelpiece's only improper actions occurred in making deceptive statements and omissions in his search-warrant affidavit. Thus, Plaintiffs only plead a

---

only after the requirements and protections of the Fourth Amendment have fallen away, *Thompson v. Whitman*, 85 U.S. 457, 471 (1873) ("A seizure is a single act, and not a continuous fact."). But Plaintiffs do not argue that any of those procedural rights are implicated by Trooper Travelpiece's illicit search.

8

single constitutional violation—an unreasonable search and seizure of property in violation of the Fourth Amendment.[7]

Having identified the claim as a Fourth Amendment unlawful-search-and-seizure-of-property claim, we must next identify its best common-law-tort analogy. This requires turning to "common-law principles that were well settled" in 1871 when Congress enacted § 1983. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019) (quoting *Kalina v. Fletcher*, 522 U.S. 118, 123 (1997)). And common-law courts have long considered the government's illegal search and seizure of property to be a trespass.[8] In 1763, the English Court of Common Pleas recognized that an action brought by the victim of an illegal search and seizure by government officers pursuant to an unlawful warrant was "an action of trespass" and upheld a large jury verdict for the plaintiff. *Wilkes v. Wood*, Lofft 1, 98 Eng. Rep. 489, 498 (C.P. 1763); *see also Entick v. Carrington*, 95 Eng. Rep. 807 (K.B. 1765).[9] And our

---

[7] Plaintiffs also argue that their claim amounts to the fabrication of evidence, which violates the due process clause. *See Burgess v. Goldstein*, 997 F.3d 541, 553 (4th Cir. 2021). But they fail to allege that any evidence was fabricated *for use in a prosecution*. Even if one thinks that lies to the magistrate were "falsified evidence" in some sense, Plaintiffs merely allege that Trooper Travelpiece used those lies to obtain actual, non-falsified evidence that was to be used at trial. That does not constitute a due-process violation but a Fourth Amendment violation.

[8] Although we analogize to the tort of trespass, we recognize that the "term 'trespass' in the common law tradition was ordinarily used in a broader sense 'to describe the conduct of a government officer actionable at common law, even though strictly speaking a form of action other than trespass would have been appropriate in the particular case.'" Bradford P. Wilson, *Enforcing the Fourth Amendment* 15 (1986) (quoting Alfred Hill, *Constitutional Remedies*, 69 Colum. L. Rev. 1109, 1132 (1969)).

[9] Scholars have recently discovered a previously unknown manuscript report of *Entick*, which they argue is more reliable than other reports of the case. T.T. Arvind & (Continued)

own common law treated unreasonable searches and seizures as a trespass. *See* Thomas

M. Cooley, *A Treatise on the Law of Torts* 294 (1879) ("An unlawful search and seizure is

an aggravated trespass . . . ."); *id.* at 295 (suggesting that an officer may become a

trespasser by going beyond the authority of a warrant).[10] So trespass is the most natural

common-law analogy for a Fourth Amendment unreasonable-search-and-seizure claim.

---

Christian R. Burset, *A New Report of* Entick v. Carrington *(1765)*, 110 Ky. L.J. (forthcoming 2022). But that version also recognizes the basic principle that English common law allowed victims of an unlawful search to sue for trespass. *Id.*

[10] *See Wise v. Withers*, 7 U.S. (3 Cranch) 331, 337 (1806) ("[I]t is a principle, that a decision of such a tribunal, in a case clearly without its jurisdiction, cannot protect the officer who executes it. The court and the officer are all trespassers."); *Osborn v. Bank of U.S.*, 22 U.S. 738, 853 (1824) (accepting that an officer acting contrary to law is a trespasser); *Cunningham v. Macon & B. R. Co.*, 109 U.S. 446, 452 (1883) (discussing cases in which trespass defendants sought to justify their conduct by showing their "authority was sufficient in law"); *Wells v. Hubbard*, 29 F. Cas. 657, 658 (C.C.D.C. 1822) (No. 17,397); *The Gala Plaid*, 9 F. Cas. 1067, 1068–69 (D. Mich. 1859) (No. 5,183); *Grumon v. Raymond*, 1 Conn. 40, 40, 43–44 (1814); *Sandford v. Nichols*, 13 Mass. (13 Tyng) 286, 286–89 (1816); *Reed v. Rice*, 25 Ky. (2 J.J. Marsh.) 44, 44–46 (1829); *Commonwealth v. Kennard*, 25 Mass. (8 Pick.) 133, 140 (1829); *Gracie v. Morris*, 22 Ark. 415, 415–18 (1860); *Flaherty v. Longley*, 62 Me. 420, 421 (1873); *Franklin v. Lawrence*, 10 Ky. Op. 219, 219 (1879); *see also* Akhil Reed Amar, *Fourth Amendment First Principles*, 107 Harv. L. Rev. 757, 786 (1994) ("In America, both before and after the Revolution, the civil trespass action tried to a jury flourished as the obvious remedy against haughty customs officers, tax collectors, constables, marshals, and the like."); Wilson, *supra*, at 9–33. At common law,

> where state actors carried out investigative searches, the officers were principally constrained by tort law, particularly the private law of trespass. Unconstitutional searches were adjudicated according to a three-step process: (i) the aggrieved party brought a trespass action; (ii) the federal officer claimed immunity, usually based on a warrant; and (iii) to overcome the asserted immunity defense, the aggrieved party alleged a violation of the Fourth Amendment. This original mode of presenting Fourth Amendment claims seems roundabout in our world, where official-liability actions frequently rest directly on the Fourth Amendment, not the common law of

(Continued)

10

When Congress passed § 1983, a trespass was "[a]ny entry upon land in the rightful possession of another, without license or permission." Melville M. Bigelow, *Elements of the Law of Torts* 191 (5th ed. 1894). That claim accrued at "the time it was committed, and not from the time when the full extent of the injury was ascertained." H.G. Wood, *supra*, at 422 (footnote omitted). Once the wrongful entry occurred, Plaintiffs "could have filed suit" with a "complete and present cause of action." *Wallace*, 549 U.S. at 388.

That accrual rule, well-settled in the common law of 1871, is consistent with the Fourth Amendment as well. The Fourth Amendment protects people's interest in property as well as "certain expectations of privacy." *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018). And those interests are violated as soon as an unlawful search and seizure of property occurs—no further prosecution is required. *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984) ("A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."); *Fox v. Van Oosterum*, 176 F.3d 342, 351 (6th Cir. 1999) ("Once that act of taking the property is complete, the seizure has ended . . . ."). Given that the Fourth Amendment is concerned with property and privacy—not guilt or innocence—the values of the Fourth Amendment

---

trespass. But the original trespass-oriented remedial scheme was intuitive given the eighteenth-century premise that officers should be treated as private parties. Originally, the Fourth Amendment did not impose special constraints on government agents as such. Rather, it ensured that "unreasonable" federal officials would be treated just like private common law trespassers.

Richard M. Re, *The Due Process Exclusionary Rule*, 127 Harv. L. Rev. 1885, 1919–20 (2014) (footnotes omitted).

are served by ensuring that a § 1983 plaintiff can vindicate their interests in property and privacy when they are violated, no matter if a prosecution is commenced.[11]

Our Court previously adopted the rule that the statute of limitations for a § 1983 claim based on an unconstitutional search and seizure of property runs from the time of the search and seizure. *Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir. 1981). And although we lacked the Supreme Court's recent guidance on § 1983 accrual rules, *Cramer*'s conclusion conforms to that guidance, the common law of 1871, and the requirements of the Fourth Amendment. So Plaintiffs' § 1983 claim based on an unconstitutional search and seizure of property accrued at the time of the search. *See Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018). As Plaintiffs filed suit more than two years after the search, we agree with the district court that the § 1983 claim is time barred.

One final argument must be considered. Plaintiffs argue that even if a Fourth Amendment search claim typically accrues at the time of the search, this particular search

---

[11] While analogizing to trespass reflects Fourth Amendment principles, using a malicious-prosecution analogy would not. Some courts at common law did treat unlawful-search-and-seizure claims as malicious-prosecution actions. *See, e.g.*, *Carey v. Sheets*, 67 Ind. 375, 375–78 (1879). But adopting the malicious-prosecution analogy for Fourth Amendment search claims would not "closely attend to the values and purposes of the constitutional right at issue." *Manuel*, 137 S. Ct. at 921. The tort of malicious prosecution focuses on the integrity of criminal prosecution and requires favorable termination of the criminal proceedings before a plaintiff can sue. *McDonough*, 139 S. Ct. at 2156. But a search may violate the Fourth Amendment without ever involving a prosecution. If "prosecution never occurs—what will the [favorable-termination] trigger be then?" *Wallace*, 549 U.S. at 393. Treating an improper-search claim as one involving criminal prosecution would leave prospective plaintiffs speculating about future prosecution and create uncertainty for courts and litigants about the proper accrual date. *See id.*

12

claim did not accrue until the charges against them were dismissed because the claim "necessarily threatens to impugn" their prosecutions. *See McDonough*, 139 S. Ct. at 2159. Based on language in *Heck* and *McDonough*, Plaintiffs argue that a favorable-termination accrual rule is required anytime a § 1983 claim "necessarily threatens to impugn" a prosecution. *McDonough*, 139 S. Ct. at 2159. We disagree.

Both *Heck* and *McDonough* applied the favorable-termination accrual rule only after determining that the claim's appropriate analog was malicious prosecution. *Heck*, 512 U.S. at 484; *McDonough*, 139 S.Ct. at 2156. We are instead governed by *Wallace*, which involved a constitutional claim of unlawful seizure of a person analogous to the tort of false imprisonment. 549 U.S. at 388–91. In *Wallace*, the plaintiff had been convicted of murder based on a confession the police obtained after arresting the plaintiff without probable cause. *Id.* at 386–87. The confession was held inadmissible on appeal and prosecutors dropped the charges against the plaintiff. *Id.* at 387. Even though the particular facts showed that the alleged unlawful seizure would impugn the prosecution, the Supreme Court rejected the malicious-prosecution analogy and held the tort accrued without favorable termination of a future prosecution. *Id.* at 388–91.

*Wallace* rejected the "bizarre extension of *Heck*" that Plaintiffs ask us to adopt here—"that an action which would impugn *an anticipated future conviction [or prosecution]* cannot be brought until that conviction [or prosecution] occurs and is set aside." 549 U.S. at 393. Adopting that extension "would require the plaintiff (and if he brings suit promptly, the court) to speculate about whether a prosecution will be brought . . . and whether the pending civil action will impugn that [prosecution]." *Id.* If

13

accrual depends on the prosecutor's conduct after the completion of the constitutional violation, § 1983 plaintiffs are left to a guessing game of if, or when, their claims will ever accrue. *Id.*[12] The appropriate common-law-tort analogy for a constitutional violation, and accordingly its accrual date, is based on the nature of the constitutional violation when it is complete.

*     *     *

Plaintiffs only allege a search and seizure of property that violated the Fourth Amendment. That claim accrued when Trooper Travelpiece performed the unlawful search in 2014. And the applicable two-year statute of limitations ran out well before they sued in 2019. So the suit is time-barred and must be dismissed. The district court's judgment is therefore

AFFIRMED.

---

[12] The impracticality of the approach *Wallace* rejected is evidenced by the effect it would have on Plaintiffs here. Trooper Travelpiece executed a single search, and it resulted in § 1983 claims by Smith, Crabtree, and Pristine. But only Smith and Crabtree were prosecuted. If accrual turned on a future prosecution, Smith's and Crabtree's claims would remain viable, but Pristine's claim would have accrued at the time of the search and be time barred. That would be so even though all three claims arose out of the same conduct and allege the same constitutional violation based on that conduct.

14