**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1175

ROCKVILLE CARS, LLC, d/b/a BMW of Rockville; PRIORITY 1 AUTOMOTIVE GROUP, INC.,

Plaintiffs - Appellants,

v.

CITY OF ROCKVILLE, MARYLAND; ROBERT L. PURKEY, JR., In his personal capacity,

Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Peter J. Messitte, Senior District Judge. (8:15-cv-03375-PJM)

Argued: January 25, 2018                           Decided: May 24, 2018

Before MOTZ and DIAZ, Circuit Judges, and Robert J. CONRAD, Jr., United States District Judge for the Western District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge Conrad wrote the opinion, in which Judge Motz joined. Judge Diaz wrote a separate opinion concurring in the judgment.

**ARGUED:** Howard Benjamin Hoffman, Rockville, Maryland, for Appellants. Kevin Bock Karpinski, KARPINSKI, COLARESI & KARP, P.A., Baltimore, Maryland, for Appellees. **ON BRIEF:** Sandra D. Lee, KARPINSKI, COLARESI & KARP, P.A., Baltimore, Maryland, for Appellees.

ROBERT J. CONRAD, JR., District Judge:

Rockville Cars, LLC and Priority 1 Automotive Group, Inc. ("Rockville Cars"), brought a Section 1983 suit in the District of Maryland against the City of Rockville, Maryland ("the City") and its Acting Chief of Inspection Services, Robert L. Purkey, Jr. In its action, Rockville Cars alleged a violation of its procedural due process rights under the Fourteenth Amendment when the City suspended its building permit. The City filed a Motion to Dismiss, which the District Court granted. Rockville Cars now appeals the District Court's decision.

We agree with the District Court and affirm its decision. A property right failed to vest in Rockville Cars' building permit when its application contained material misrepresentations. Furthermore, even if Rockville Cars did have a property interest, it failed to take advantage of the sufficient process afforded to it by the state.

I.

In pursuit of its business selling new and used cars, Rockville Cars leased a parcel of land owned by Robin Tang in Rockville, Maryland. On this leased plot stood a building which previously housed a restaurant and a small furniture store. Rockville Cars planned to convert this building into an automobile show room.

Before commencing its work on the building, Rockville Cars submitted two documents to the City in order to obtain a building permit. First, Rockville Cars sent a Minor Site Plan Application on October 17, 2012, to the City's Department of Community Planning and Development Services. This department would determine whether Rockville Cars' renovation plans complied with the City's zoning ordinances. In its Minor Site Plan

2

Application, Rockville Cars accurately listed Robin Tang as the owner of the parcel of land and obtained his permission to begin redevelopment of the existing building. The project narrative stated that Rockville Cars would repurpose the building into a show room that would house approximately four cars. Specifically, Rockville Cars disclosed that the show room would "replace the vacated, approved restaurant use within the existing building." J.A. 46.

Approximately four months later, in February 28, 2013, Rockville Cars filed a second document, a Commercial Building Permit Application ("Permit Application"), to a separate division of the Planning Department, the Inspection Services Division. This division's bailiwick did not include determining compliance with the City's zoning ordinances. It never saw—nor did the Permit Application refer to—the Minor Site Plan Application. The Permit Application featured two differences from the Minor Site Plan Application. First, under the project description, the Permit Application stated that Rockville Cars would not just repurpose, but *demolish* and renovate the building.[1] The demolition would leave the current building's existing foundation and partial walls unchanged, but Rockville Cars would otherwise rebuild within that footprint. Second, the Permit Application mistakenly listed Priority One Automotive as the property owner rather than Mr. Tang.

---

[1] Not only did this description conflict with the Minor Site Plan Application, it also conflicted with other portions of the Permit Application itself. None of the checkboxes pertinent to demolition above that handwritten project description were filled in.

After receiving the Permit Application, the City approved the renovation of the Rockville Pike building on March 21, 2013, and issued a permit in Mr. Tang's name. With the permit in hand, Rockville Cars razed the leased building, leaving only the foundational slab. Rockville Cars' plans, however, would soon come to a grinding halt. On July 17, 2013, Rockville Cars received an email relaying that Mr. Tang contacted the City and retracted his permission underlying the building permit. Accordingly, on July 19, Acting Chief of Inspection Services for the City, Robert Purkey, Jr., suspended Rockville Cars' building permit through a written Stop Work Order. The order explained that Mr. Tang claimed Rockville Cars lacked the authority to submit a building permit application. Additionally, the Stop Work Order stated that the scope of the project did not comport with the Minor Site Plan Amendment, which the City previously approved.

In December of 2013, the City sent Rockville Cars a letter further detailing why it suspended the building permit. The City explained that the demolition of the building resulted in a violation of the City's zoning ordinances. Specifically, a "build-to" provision applied along the commercial strip upon which Mr. Tang's property was located. This ordinance mandated the construction of new buildings within a certain distance from the road. The original building predated the build-to provision and therefore was exempted from compliance. The City Code would have allowed this exception to continue if Rockville Cars merely renovated the interior of the original building. However, because Rockville Cars *demolished* the building, Rockville Cars was then required to build any new structure in accordance with the build-to provision.

4

The following year, on May 16, 2014, Rockville Cars submitted a new application which the City approved. To restart construction, Rockville Cars conceded to numerous demands at a considerable expense. As a result, Rockville Cars brought suit in the District of Maryland claiming that suspension of the building permit violated its procedural due process rights under the Fourteenth Amendment. In Rockville Cars' sprint to federal court, it chose not to first pursue its claim through the City's Board of Adjusters and Appeals. As laid out in the Rockville City Code, Chapter 5, Article 5, Section 113.1, this Board of Appeals allowed claims for "[a]ny person aggrieved by and desirous of challenging a decision of the administrative authority in connection with the interpretation, application, or modification of any provision … relating to the manner of construction or material used in connection with the erection, alteration, or repair of a building." J.A. 28.

The City responded to Rockville Cars' complaint by filing a Motion to Dismiss the Amended Complaint, or, in the Alternative, Motion for Summary Judgment.[2] The District Court granted the City's Motion, concluding that no property interest vested in a building permit granted on the basis of material misrepresentations within an application. *Rockville Cars, LLC v. City of Rockville, Maryland*, No. CV PJM 15-3375, 2017 WL 57215, at *6 (D. Md. Jan. 4, 2017). It also found in the alternative that, even if Rockville Cars obtained a property interest, it was not deprived of that interest. *Id.* at *6–7. Going further, the District Court also concluded that, even if Rockville Cars was deprived of its property interest, it was nonetheless afforded due process. *Id.* at *7–8. The District Court explained

---

[2] The District Court treated the City's motion as a Motion to Dismiss.

that Rockville Cars had access to post-deprivation process but "gave the matter little or no thought." *Id.* at \*9.  Not only did the District Court point to the City's Board of Appeals, it also stated that Rockville Cars had access to state courts. *Id.*  As such, the District Court found that Rockville Cars failed to establish a claim regarding the inadequacy of a process that was never tapped. *Id.*

Rockville Cars now argues four issues on appeal, contending that the District Court erred by: (1) relying on extrinsic evidence that was not integral to Rockville Cars' Amended Complaint; (2) finding no property interest in Rockville Cars' building permit; (3) finding that, in the alternative, Rockville Cars was not deprived of any property interest that existed; and (4) finding that, in the alternative, Rockville Cars was not denied due process of law if a deprivation of property interest occurred.

## II.

We review the grant of a motion to dismiss for failure to state a claim de novo. *Weidman v. Exxon Mobil Corp.,* 776 F.3d 214, 219 (4th Cir.2015).  In doing so, we must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party. *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).  To survive a 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is "plausible on its face," if a plaintiff can demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.*  While considering a 12(b)(6) motion, we "may consider documents attached to the complaint or

6

the motion to dismiss 'so long as they are integral to the complaint and authentic.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *Philips v. Pitt Cnty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir.2009)).

III.

Procedural due process applies only to the deprivation of liberty and property interests that the Fourteenth Amendment encompasses. *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). The bottom line is that the deprivation of a protected interest warrants some sort of notice and opportunity to be heard. *Goss v. Lopez*, 419 U.S. 565, 579 (1975). To establish its procedural due process claim, Rockville Cars must show: (1) that it had a protected property interest; (2) of which the City deprived it; (3) without due process of law. *Tri Cty. Paving, Inc. v. Ashe Cty.*, 281 F.3d 430, 436 (4th Cir. 2002).

With this in mind, we first assess whether or not Rockville Cars received a protected property interest in the building permit it received from the City.

A.

The terms "liberty" and "property" are "broad and majestic terms." *Roth*, 408 U.S. at 571. "Property," for instance, has been extended well beyond the concepts of land, money, or chattel. *Id.* at 572. It also encompasses more abstract concepts, such as benefits or continued employment. *Id.* at 576. However, a plaintiff must show a legitimate claim of entitlement—that is, something more than an abstract need or desire—to its purported property interest. *Id.* at 577.

Property interests are not defined by the Constitution. Rather, they "are created and their dimensions are defined by existing rules or understandings that stem from an

7

independent source such as state law." *Id.* For example, a welfare recipient receives a property interest in her benefits as created and defined by statutory terms. *Goldberg v. Kelly*, 397 U.S. 254, 261–62 (1970). A state employee may or may not have a property interest in her employment depending on the terms of that employment. *See Roth*, 408 U.S. at 578 (finding that an employee's term was limited to specific period of time without any guarantee of renewal, which transfers no property interest in re-employment); *see also Bannum v. Town of Ashland*, 922 F.2d 197, 200 (4th Cir. 1990) (finding that a half-way house's approval to operate was at-will and therefore did not create a property interest).

Here, Rockville Cars claims that it received a property interest in the building permit because the City's zoning ordinances limit its power to suspend or revoke permits for cause, thus creating an entitlement. For instance, under Ordinance 14-12, the City may suspend or revoke a permit if it determines that "[t]here has been any false statement or misrepresentation as to a material fact in the application or plans on which the permit or application was based." J.A. 26–27.

In response, the City does not argue that building permits fail to convey a property interest generally. Rather, the City rightly argues that an interest in property fails to vest *ab initio* when obtained through a material misrepresentation or in violation of zoning ordinances. Because Rockville Cars' application contained material misrepresentations and the demolition of the building on Mr. Tang's property resulted in a violation of the City's zoning ordinances, the City concluded that no property interest vested in Rockville Cars' permit. We agree.

8

In order to establish a procedural due process claim, a party must have a *legitimate* claim of entitlement to a property interest. *Roth*, 408 US at 576. Rockville Cars does not have a legitimate claim of entitlement to a permit that was granted on the basis of material misrepresentations.

It is imbedded in Maryland law that a property interest fails to accrue if the City grants a permit on the basis of mistake or in violation of the law. The foundation of Maryland's common law doctrine of vested rights rests on this principle. The vested rights doctrine allows property owners to "obtain a vested right in an existing zoning use that will be protected against a subsequent change in a zoning ordinance prohibiting that use." *Maryland Reclamation Assocs, Inc. v. Harford Cty.*, 994 A.2d 842, 868 (Md. 2010) (quoting *Powell v. Calvert County*, 795 A.2d 96, 102-03 (Md. 2002)). To prove a vested right, a property owner must: (1) obtain a lawful building permit; (2) commence building in good faith; and (3) complete a substantial portion of construction. *Prince George's Cty. v. Sunrise Dev. Ltd. P'shp*, 623 A.2d 1296, 1304 (Md. 1993). The fact that the first element of the vested rights doctrine requires obtaining a lawful building permit illustrates a core principle: state law does not entitle permit holders to a property right when permits are obtained on the basis of mistake or in violation of the law. Such events render any permit void *ab initio*.

*Marzullo v. Kahl* aptly illustrates this principle. 783 A.2d 169 (Md. 2001). In that case, a city advisory board granted Kahl a permit to build a structure for breeding reptiles because it would qualify as a permissible "farm." *Id.* at 170–72. If the building did not qualify as a farm, however, zoning ordinances would not allow Kahl a permit. *Id.* at 173.

9

A gambit of appeals ensued until the Court of Appeals of Maryland found that substantial evidence existed to support a decision that, from the start, breeding reptiles did not qualify as a "farm." *Id.* at 187. The court denied Kahl's vested rights claim for two reasons. First, there was no change in the zoning laws of that case. *Id.* at 189. Second, and most applicable to this case, the court found that Kahl's "permit was improperly issued." *Id.* The city's zoning laws did not actually permit Kahl to build the structure. *Id.* at 189–90. Despite what the city originally told Kahl, the permit itself was never a "lawful permit because [Kahl] could not lawfully conduct his business" within that specific zone. *Id.* at 190.

*Marzullo* supports the principle applicable here that no property interest vests in a permit that the state never properly granted. This concept is a familiar one recognized elsewhere. *See, e.g.*, *Bone v. Lafayette*, 919 F.2d 64, 65 (7th Cir. 1990) (finding no property interest in a permit when, under state law, a permit issued in violation of law is void.); *KTK Min. of Virginia, LLC v. City of Selma, Ala.*, 984 F. Supp. 2d 1209, 1226 n.11 (S.D. Ala. 2013) (noting in the analysis of protected property interests that "[t]he Alabama Supreme Court has held that, '[w]here a building permit is issued in violation of [a] zoning ordinance, it is invalid, and the permittee acquires no vested rights thereunder….'"); *Snyder v. Minneapolis*, 441 N.W.2d 781, 792 (Minn. 1989) ("[W]here a permit has been issued by an authorized officer under a mistake of fact and contrary to zoning ordinances, it confers no privilege on the person to whom it is issued.") (quoting *State ex rel. Howard v. Village of Roseville*, 70 N.W.2d 404, 408 (Minn. 1955)); *see also Kekai v. Hargrave*, 649 F.2d 748, 752 (9th Cir. 1981) (finding in the employment context that an employee had no

legitimate entitlement to continued employment, and therefore no property interest protected by procedural due process, in a position she obtained as a result of material misrepresentation); *Mellin v. Flood Brook Union Sch. Dist.*, 790 A.2d 408, 421 (Vt. 2001) (finding that, in the employment and licensing of an elementary school teacher, even the repeated renewal of a government-issued license did not create a property interest when the teacher's elementary teaching license was not properly issued in the first place).

Rockville Cars' procedural due process claim fails because no property right vested in the building permit. Its applications contained three material misrepresentations.[3] First, the two documents it submitted to the City differed in describing the scope of the renovation project. Where the Minor Site Plan Amendment stated that Rockville Cars would *renovate* the existing building, the Permit Application stated that Rockville Cars would *demolish* it. Because the City relied on the Minor Site Plan Amendment to assure compliance with zoning ordinances, the City granted the building permit on the premise that the project would gut and renovate the existing building.

---

[3] The misrepresentations within Rockville Cars' application are material, even if the City, post permit-suspension, ultimately corrected the identity of the property owner. A misrepresentation is "material" if it is "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential." MATERIAL, Black's Law Dictionary (10th ed. 2014). Whether or not the City caught all of Rockville Cars' misrepresentations, and whether or not those misrepresentations actually affected the City's decision is irrelevant. Knowledge of them would affect the decision-making process. Here, who is doing the construction, and the nature of the construction matters. And the demolition of a building affected zoning ordinance compliance where a renovation would not.

Second, Rockville Cars misrepresented the owner of the property in question. Within its Permit Application, Rockville Cars listed Priority 1 Automotive as the owner of the property when in fact it was Mr. Tang who owned the property and possessed authority to submit the Building Permit Application.

Third, Rockville Cars certified in the Building Permit Application that the proposed construction "shall conform to the regulations in the Rockville City Code, and all other codes and regulations …." J.A. 34. The Building Permit itself stated, "PERMIT VOID IF ZONING ORDINANCE IS VIOLATED." J.A. 37. By demolishing the building in question, Rockville Cars violated the City's build-to ordinance, which required construction of new buildings within a certain distance from the center of the street.

Given the above material misrepresentations, Rockville Cars had no "legitimate claim of entitlement" to a permit it never lawfully obtained. *Roth*, 408 U.S. at 577. At best, Rockville Cars had an abstract need or desire that a permit granted by any means should afford the holder full procedural due process protection.[4] Such abstract needs and desires fail to trigger procedural due process protections. *Id.*

---

[4] We do not find the dicta in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), persuasive enough to reach an opposite conclusion. No "retrospective fiction" exists in this case. While Rockville Cars obtained a permit, it did not do so legitimately. A *legitimate* entitlement is necessary to invoke the protections of Procedural Due Process. *Roth*, 408 U.S. at 577. Nor did the City "rephrase" their reasoning to justify suspending Rockville Cars' permit. From the start, the Stop Work Order stated that the scope of the project did not comport with the Minor Site Plan Amendment.

The concurrence expresses concern that "a municipality wishing to deprive a person of an interest could simply identify—or even invent—some material misrepresentation on the part of the owner and retroactively vanquish the interest without the burden of process." That simply is not the case here. The permit suspension identified the material misrepresentations that we find sufficient here.

B.

Although the Court's analysis could very well stop here, Rockville Cars' procedural due process claim fails for another, equally important reason. Even if a property right vested in Rockville Cars' building permit, and even if the City deprived Rockville Cars of that interest, no § 1983 procedural due process violation exists when a party fails to exhaust both administrative and state court remedies that the government affords to them.

Analyzing the adequacy of process a state affords usually requires courts to "consult the entire panoply of predeprivation and postdeprivation process provided by the state." *Tri Cty. Paving, Inc.*, 281 F.3d at 436 (quoting *Fields v. Durham*, 909 F.2d 94, 97 (4th Cir.1990)). This "panoply" of process could spark a lengthy discussion beginning with whether or not Rockville Cars received an opportunity to be heard prior to the suspension of its permit. However, the Court need not decide the sufficiency of Rockville Cars' pre-deprivation process when it failed to even pursue the post-deprivation state remedies afforded to it. Such an error proves fatal to Rockville Cars' claim when "'the existence of state remedies *is* relevant' for a § 1983 action based on procedural due process." *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990)). After all, "[t]he constitutional violation actionable under § 1983 is not complete … unless and until the State fails to provide due process." *Id.*; *Tri Cty. Paving, Inc.*, 281 F.3d at 437.

First, Rockville Cars could have pursued an appeal through the City's Board of Appeals. Rockville Cars argues that this appellate process was insufficient to begin with. However, the administrative appeals process was available to Rockville Cars. The

13

demolition of a building can certainly be seen as a "manner of construction … in connection to … the alteration … of a building." J.A. 28. Rockville Cars made no effort to submit a claim before the Board of Appeals, nor did it ever allege that the City made representations that the Board was closed to it.

Second, as the District Court pointed out, Rockville Cars could have availed itself of the state courts. Rockville Cars could have sought an injunction to block the City's suspension of the building permit. It could have even sought an immediate declaration of its rights that the appellate process provided by the City Code was unconstitutional. However, Rockville Cars ignored these avenues in its rush to federal court. As a result, the Court has no reason to believe that the state process for redeeming Rockville Cars' alleged property right in its permit was constitutionally inadequate. Not when Rockville Cars "simply 'found it unnecessary even to enter upon, let alone travel the entire length of, that road.'" *Mora*, 519 F.3d at 230 (quoting *Amsden v. Moran*, 904 F.2d 748, 755 (1st Cir.1990)).

IV.

There is no federal case here. Rockville Cars failed to allege a § 1983 procedural due process violation. As a result, we find it unnecessary to discuss whether the District Court erred in relying on extrinsic documents when granting the City's Motion to Dismiss. Nor does the Court need to address whether remand to another district court judge is necessary.

14

For the foregoing reasons, the District Court's order granting the City of Rockville's

Motion to Dismiss is

*AFFIRMED.*

DIAZ, Circuit Judge, concurring in the judgment:

Rockville Cars' failure to exhaust available administrative and state court remedies dooms this federal case. For that reason, I agree that the district court properly granted dismissal. I would not, however, reach the thornier question of whether Rockville Cars obtained a protected property interest that entitled it to some quantum of process before the City revoked its permit. Because the majority reaches this issue and concludes that no such interest attached, I write separately to explain why that may not be so.

As the majority recognizes, a building permit issued under state or local law generally conveys in its holder a property interest protected by the Due Process Clause of the Fourteenth Amendment. *See* Maj. Op. at 8. Such protection guards "those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Nevertheless, the majority concludes that Rockville Cars acquired no such interest because it made material misrepresentations in its permit application regarding the true owner of the property, as well as the nature and extent of the work Rockville Cars intended to perform.[*]

It is difficult to square this conclusion with the principles undergirding the Due Process Clause or with precedent. The Supreme Court addressed a similar question (if

---

[*] It is unclear to me that all of the purported misrepresentations are in fact material. For example, while Rockville Cars did misidentify the owner of the property in its application, the permit ultimately issued by the City identified the correct owner. This cuts against materiality because it suggests that the City's decision to issue the permit was not based on Rockville Cars' statement as to who owned the land. Nevertheless, for the sake of argument, I assume that the permit application contained some material misrepresentations.

16

obliquely) in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). There, the Cleveland Board of Education fired Loudermill, a security guard, after determining that he had lied on his job application when he stated that he had never been convicted of a felony. *Id.* at 535. Relevant state law classified Loudermill as a civil servant who could be terminated "only for cause." *Id.*

The Court noted (albeit in dicta) that even though Loudermill made a misrepresentation in his application, he nevertheless possessed a recognized property interest in his continued employment. *See id.* at 539 (acknowledging that the question was not presented below). And the Court rejected the Board's claim that Loudermill "had no property right under state law because he obtained his employment by lying on the application." *Id.* at 539 n.5. "[H]ad Loudermill answered truthfully," the Board argued, "he would not have been hired." *Id.* But the Court explained that the Board's argument "relies on a retrospective fiction inconsistent with the undisputed fact that Loudermill was hired and did hold the security guard job. The Board cannot escape its constitutional obligations by rephrasing the basis for termination as a reason why Loudermill should not have been hired in the first place." *Id.*

So too here. Just as Loudermill "was hired and did hold the security job," Rockville Cars received and did hold a permit issued by a City official through the City's codified permitting process. The City, if it wishes to revoke the permit, may well have to face its own "constitutional obligations" and afford Rockville Cars some modicum of process along the way. Otherwise, a municipality wishing to deprive a person of an interest could simply identify—or even invent—some material misrepresentation on the part of the owner

17

and retroactively vanquish the interest without the burden of process. Such a result smacks of the sort of "arbitrary action" against which the Due Process Clause protects. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998).

The Maryland cases relied on by the majority speak to the *substance* of the rights to which a permit holder is entitled, rather than whether the holder has a constitutional right to *process*. *See, e.g.*, *Marzullo v. Kahl*, 783 A.2d 169, 188–90 (Md. 2001) (discussing whether permit holder obtained vested right under state law to "use his property to raise, breed, and keep reptiles or snakes"); *see also Ihnken v. Gardner*, No. CCB-11-3508, 2014 WL 4371440, at *6 (D. Md. Apr. 3, 2014) (explaining that *Marzullo* addressed "the issue of whether a permit substantively provided for a certain land use" rather than "whether a property interest had been revoked in violation of the holder's due process rights"). Here, as in *Ihnken*, Rockville Cars' due process claim does not turn on "whether the permit actually allowed" the demolition to proceed, but instead asks only whether Rockville Cars "was given proper notice and an opportunity to be heard before the permit—whatever it may have lawfully allowed—was revoked." *Id.*

Rockville Cars applied for a permit because it wanted to demolish two existing retail storefronts and convert them into a single BMW showroom. The inquiry as to what construction work (if any) Rockville Cars could perform given the misrepresentations in its application is a question that could have been pursued through the administrative appeal process or in state court. Rockville Cars chose not to do so, and cannot come to us now to seek relief. But that inquiry is distinct from the question of whether the City, after granting a permit to Rockville Cars, could then take it away without some form of notice and a

18

meaningful opportunity to be heard. It seems to me the Constitution requires that much. But because Rockville Cars failed to exhaust the administrative and state court remedies available to it, I join my colleagues in affirming the district court's judgment dismissing this case.