**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1503

ARELI VEGA REYNA, as next friend of J.F.G., K.G., J.D.V. and J.D.V., all
minor children; MACARIO DIAZ MORALES; KAREN VITELA, as next friend
of M.V.R.C., a minor; HUMBERTO RAMOS RAYGOZA; ADELA MEJIA, as
next friend of K.D.R.M., a minor,

Plaintiffs - Appellants,

v.

RUSSELL HOTT, in his official capacity as Director of the Immigration and
Customs Enforcement Virginia Field Office; RONALD D. VITIELLO, in his
official capacity as Acting Director of the Department of Homeland Security;
ELAINE C. DUKE, in her official capacity as Acting Secretary of the Department
of Homeland Security,

Defendants - Appellees.

------------------------------

JACK P. SHONKOFF, M.D.; JAMES A. COAN, Ph.D.; J.H. PATE SKENE, J.D.,
Ph.D.; LINDA C. MAYES, M.D.; JOSEPH WOOLSTON, M.D.; AMERICAN
ACADEMY OF CHILD AND ADOLESCENT PSYCHIATRY; AMERICAN
PSYCHOANALYTIC ASSOCIATION; CAPITAL AREA IMMIGRANTS'
RIGHTS COALITION,

Amici Supporting Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at
Alexandria. Liam O'Grady, District Judge. (1:17-cv-01192-LO-TCB)

Argued: December 12, 2018                    Decided: April 16, 2019

Before NIEMEYER, FLOYD, and RICHARDSON, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Floyd and Judge Richardson joined.

**ARGUED:** Nicholas Richard Klaiber, Richmond, Virginia, for Appellants. Julian Michael Kurz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Simon Y. Sandoval-Moshenberg, Rebecca R. Wolozin, Falls Church, Virginia, Angela Adair Ciolfi, LEGAL AID JUSTICE CENTER, Charlottesville, Virginia, for Appellants. Joseph H. Hunt, Assistant Attorney General, William C. Peachey, Director, Jeffrey S. Robins, Assistant Director, District Court Section, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. Erik W. Snapp, Christopher S. Burrichter, Chicago, Illinois, G. Eric Brunstad, Jr., DECHERT LLP, Hartford, Connecticut, for Amici Jack P. Shonkoff, M.D., James A. Coan, Ph.D., J.H. Pate Skene, J.D., Ph.D., Linda C. Mayes, M.D., Joseph Woolston, M.D., the American Academy of Child and Adolescent Psychiatry, and the American Psychoanalytic Association. Adina Appelbaum, Claudia Cubas, David Laing, CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, Washington, D.C., for Amicus Capital Area Immigrants' Rights Coalition.

NIEMEYER, Circuit Judge:

Macario Diaz Morales and Humberto Ramos Raygoza, who are both aliens, were arrested and detained in Farmville, Virginia, by Immigration and Customs Enforcement ("ICE") under 8 U.S.C. § 1226(a), pending removal for being in the United States without inspection or admission. They, along with their children, commenced this action against officials of ICE and the Department of Homeland Security, challenging their transfer or anticipated transfer from ICE's detention facility in Farmville, Virginia, to its facility in Livingston, Texas, or another facility out of State. They alleged that such transfers "separat[e] [them] from their children and mak[e] it impossible for children to have access to their parents or to visit them" and therefore violate their "substantive due process right to family unity" and their "procedural due process right to notice and an opportunity to be heard" before such transfers, in violation of the Fifth Amendment. Because ICE "frequently transfers detainees among its detention facilities," they also sought to represent a nationwide class of detainees and their children. The plaintiffs sought declaratory and injunctive relief, and Raygoza additionally sought habeas relief based on the same allegations.

ICE and the Department of Homeland Security (collectively, "the government") filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), contending (1) that, by reason of 8 U.S.C. § 1252(a)(2)(B)(ii), the court did not have jurisdiction to review such discretionary decisions; (2) that the substantive right to "family unity" does not exist; and (3) that the plaintiffs have no liberty interest protected by procedural due process.

3

While the district court rejected the government's jurisdictional argument, it granted the motion to dismiss, concluding that the plaintiffs had not sufficiently alleged that the government's transfer practices violated a substantive due process right. And without a protectable liberty interest, the court concluded, the plaintiffs were not denied procedural due process. Relying on those same reasons, the court also denied Raygoza's request for habeas relief. We affirm.

I

In September 2017, Morales and Raygoza were arrested in Virginia, where they and their families lived, on charges that they were present in the United States without inspection or admission. They were detained at the Farmville Detention Center in Farmville, Virginia, pursuant to 8 U.S.C. § 1226(a), pending a decision on their removal from the United States. A month later, ICE transferred Raygoza, along with 150 other detainees, allegedly without prior notice, to the Polk County Detention Center in Livingston, Texas. Morales alleged that at that time he "believed he [too] would be imminently transferred out of Virginia by ICE."

In October 2017, a month after their arrest, Morales and Raygoza, along with their children, commenced this action challenging the constitutionality of ICE's transfer decisions and actions.

On November 1, 2017, Morales was released on bond, and on November 8, 2017, Raygoza, who had been transferred to Texas, was also released on bond. They both have asserted, however, that they "are subject to re-detention by ICE at any time" and

thereafter would "remain at risk of sudden transfer out of reach of their children," in violation of the constitutional "right to family unity."

In their complaint, Morales, Raygoza, and their children alleged, in three counts, claims grounded on a constitutional right to "family unity." In Count I, they contended that "ICE's policies and actions . . . violated the substantive due process right to family unity . . . by transferring [detainees] away from their children such that it prevents them from maintaining family unity with their children, as guaranteed by the Fifth Amendment." In Count II, they alleged that "ICE's policies and actions . . . violate the procedural due process right to notice and an opportunity to be heard . . . prior to transferring a parent away from his or her child, preventing family unity between parent and child, as guaranteed by the Fifth Amendment." And in Count III, Raygoza sought habeas relief based on his alleged unconstitutional transfer from Virginia to Texas. The complaint requested declaratory and injunctive relief against the government, seeking to "stop . . . all federal immigration official[s] from indiscriminately ripping families apart by abruptly and suddenly transferring detained immigrant parents without regard for their or their children's rights to family unity and due process of law."

The government filed a motion to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For its jurisdictional challenge, the government relied on 8 U.S.C. § 1252(a)(2)(B)(ii), which deprives federal courts of subject-matter jurisdiction to review any "decision or action of the Attorney General or the Secretary of Homeland Security *the authority for which is specified under this subchapter to be in the discretion* of the Attorney General or the Secretary of Homeland Security." (Emphasis

5

added).  It located the relevant discretionary decisions sought to be reviewed in 8 U.S.C. § 1231(g), which provides that "the Attorney General shall arrange for *appropriate* places of detention for aliens detained pending removal or a decision on removal" (emphasis added), arguing that "appropriate" connotes discretion.  For its argument under Rule 12(b)(6) that the plaintiffs' complaint failed to state a claim upon which relief could be granted, the government contended that no substantive due process right exists "to remain in detention in a particular location near the detainees' children" and that, because the "plaintiffs have no protected interest in detention at a specific location or in a specific state, . . . the transfer of a detainee without a hearing does not violate" the right to procedural due process.

The district court denied the government's motion based on a lack of jurisdiction, but it dismissed the plaintiffs' complaint under Rule 12(b)(6), concluding that a substantive due process right to family unity would require an unjustified expansion of accepted jurisprudence and, moreover, that such a right would not be violated in this case because "any government intrusion on [such a] right [would be] reasonable and incidental" and would not "shock the conscience."  Based on its conclusions reached with respect to the plaintiffs' substantive due process claim, the court concluded that the plaintiffs had no "recognized liberty interest" to be protected procedurally.  For the same reasons, the court dismissed Raygoza's habeas petition.

From the district court's judgment dated March 20, 2018, the plaintiffs filed this appeal.

6

We begin by noting what the plaintiffs are not challenging. They do not challenge their arrest and ICE's right to detain and continue to detain Morales and Raygoza, agreeing that the two men were lawfully arrested and detained under the authority granted to ICE in 8 U.S.C. § 1226(a); they do not challenge their place of detention in Farmville, Virginia; they do not challenge the conditions of their confinement; and they do not challenge any bond-hearing conduct or bond-hearing decision made under § 1226(a). Rather, they contend more narrowly that ICE officials' decisions to transfer them while detained from a detention facility near their families to another facility away from their families violated a substantive due process right to "family unity," as well as their procedural due process rights to notice and hearing before transfer. As they summarize their position, federal immigration officers are "indiscriminately ripping families apart by abruptly and suddenly transferring detained immigrant parents without regard for their children's rights to family unity and due process of law."

In response to the plaintiffs' claims, the government contends that we lack jurisdiction to review ICE transfer decisions, as they are discretionary decisions over which Congress has precluded judicial review under 8 U.S.C. § 1252(a)(2)(B)(ii).

Because any question about jurisdiction goes to our power to act, we must decide first whether we have jurisdiction — regardless of whether the issue of jurisdiction is raised or how it is raised — to review ICE officials' decisions to transfer aliens detained under § 1226(a) from a facility near the detainees' families to one farther away. *See*

*Demore v. Kim*, 538 U.S. 510, 516 (2003); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998).

For its jurisdictional argument, the government notes that 8 U.S.C. § 1252(a)(2)(B)(ii) strips federal courts of subject-matter jurisdiction to review decisions or actions of ICE or the Secretary of Homeland Security, "the authority for which is *specified* under this subchapter to be *in the discretion* of the Attorney General or the Secretary of Homeland Security." (Emphasis added). And it argues that the discretionary decision or action that we are being asked to review is "specified" in 8 U.S.C. § 1231(g), which provides, "The Attorney General shall arrange for *appropriate* places of detention for aliens detained pending removal or a decision on removal," asserting that "'appropriate' connotes discretion." (Emphasis added).[*]

Section 1252 provides in relevant part:

(a)(2) Matters not subject to judicial review

\* \* \*

(B) Denials of discretionary relief

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, *no court shall have jurisdiction to review —*

\* \* \*

[*] While the relevant statutes often refer to the Attorney General, those references are "deemed to refer" to the Secretary of Homeland Security. *See* 6 U.S.C. §§ 557, 251(2).

8

(ii)  *any other decision or action* of the Attorney General or the Secretary of Homeland Security *the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security*, other than the granting of relief under section 1158(a) [addressing asylum] of this title.

8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).  And the Supreme Court has provided the proper understanding of when discretion is "specified" in the statute:

> [T]he statutory proscription Congress enacted, § 1252(a)(2)(B)(ii), speaks of authority "specified" — not merely assumed or contemplated — to be in the Attorney General's discretion.  "Specified" is not synonymous with "implied" or "anticipated."  *See Webster's New Collegiate Dictionary*, 1116 (1974) ("specify" means "to name or state explicitly or in detail").  *See also Soltane v. U.S. Dept. of Justice*, 381 F.3d 143, 147 (C.A.3 2004) (Alito, J.) ("[W]e do not think . . . that the use of marginally ambiguous statutory language without more, is adequate to 'specif[y]' that a particular action is within the Attorney General's discretion for the purpose of § 1252(a)(2)(B)(ii).").

*Kucana v. Holder*, 558 U.S. 223, 243 n.10 (2010).  Thus, when § 1252 strips courts of jurisdiction to review decisions or actions for which authority is "*specified* . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security," such discretionary authority may not be implied; it must be explicitly conferred in the statute.

The government contends that discretionary authority to make transfer decisions and engage in transfer actions is "specified" in § 1231(g).  Section 1231(g) provides that "the Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."  It also provides that when such "facilities are unavailable," the Attorney General may acquire or construct a facility suitable for such use. The government argues that the word "'appropriate' when modifying places of detention connotes discretion," and therefore, its decisions and actions regarding transfer

9

are not subject to review by the courts. Its very argument, however — that "appropriate" *connotes* discretion — gives away its position, as "connote" means "to convey *in addition to* exact explicit meaning" or "to imply as a logical connotation," either of which means implied. *Merriam-Webster's Collegiate Dictionary* 264 (11th ed. 2007) (emphasis added). Moreover, while the word "appropriate" is a broad term understood to incorporate "multiple relevant factors," *Michigan v. EPA*, 135 S. Ct. 2699, 2709 (2015), discretion to consider the factors can only be *implied* from their multiplicity.

More fundamentally, however, the language of § 1231(g) does not address transfers at all, nor does it explicitly grant the Attorney General or the Secretary of Homeland Security discretion with respect to transfers. Indeed, § 1231(g) appears to relate more centrally to the government's brick and mortar obligations for obtaining facilities in which to detain aliens. It provides that the Attorney General "shall arrange for appropriate places of detention for aliens detained pending removal or decision on removal" and, when such facilities "are unavailable," authorizes the Attorney General to "expend" from specified appropriations "amounts necessary to acquire land and to acquire, build, remodel, repair, and operate facilities (including living quarters for immigration officers if not otherwise available) necessary for detention." 8 U.S.C. § 1231(g)(1).

Nonetheless, the government relies on our decision in *Gandarillas-Zambrana v. Bd. of Immigration Appeals*, 44 F.3d 1251, 1256 (4th Cir. 1995) (addressing the predecessor to 8 U.S.C. § 1231(g)), to find transfer authority within § 1231(g). In *Gandarillas-Zambrana*, however, we *implied* the right to transfer aliens from one

10

detention facility to another from the authority granted the Attorney General under the predecessor to § 1231(g) to determine the location of detention facilities. *See id.* Thus, while that holding might rightfully locate government authority to transfer aliens from one detention facility to another in § 1231(g), it finds that the authority is implied. That, of course, does not serve to advance the government's position in seeking to apply § 1252(a)(2)(B)(ii), which requires that discretionary authority be *specified*, *i.e.*, made explicit, in order to be unreviewable.

Moreover, any approach that we might take for interpreting § 1252(a)(2)(B)(ii) and § 1231(g) must respect the presumption favoring judicial review. Indeed, in *Kucana*, the Supreme Court emphasized the importance of this presumption in the context of immigration legislation. 558 U.S. at 251–52. It held there that, "[b]ecause the presumption favoring interpretations of statutes to allow judicial review of administrative action is well-settled, . . . the Court assumes that Congress legislates with knowledge of the presumption. It therefore takes *clear and convincing evidence* to dislodge the presumption." *Id.* (emphasis added) (internal quotation marks and citation omitted). In light of this, we cannot conclude that § 1231(g) provides clear and convincing evidence that Congress specified discretionary authority to transfer detainees from one facility to another, thereby satisfying the circumstances giving rise to the jurisdictional bar of § 1252(a)(2). *See Aguilar v. ICE*, 510 F.3d 1, 20 (1st Cir. 2007); *Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 689 (9th Cir. 2003). *But see Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999). Accordingly, we conclude that § 1252(a)(2)(B)(ii) does not strip courts of jurisdiction to review transfer decisions.

11

## III

On the merits, we, like the district court, have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal. While the plaintiffs have sought support from a few cases in the constitutional neighborhood of such a right, *see, e.g.*, *Obergefell v. Hodges*, 135 S. Ct. 2584, 2594 (2015) (lauding "Cicero, who wrote, 'The first bond of society is marriage; next, children; and then the family'"), we have found no precedent recognizing that there is a right to "family unity" limiting detainee transfers. *See Aguilar*, 510 F.3d at 23 ("We have scoured the case law for any authority suggesting that claims similar to those [made by the plaintiffs] here are actionable under the substantive component of the Due Process Clause, and we have found none"). To be sure, there are decisions that recognize the "power of parents to control the education of their own" children, *Meyer v. Nebraska*, 262 U.S. 390, 401 (1923), and the "fundamental right to make decisions concerning the rearing" of one's children, *Troxel v. Granville*, 530 U.S. 57, 68 (2000), but those decisions hardly support the asserted right to be detained in the same state as one's children, the right to be visited by children while in detention, or a general right to "family unity" in the context of detention.

Moreover, we are hardly free to create a new substantive due process right in view of Supreme Court decisions cautioning courts from innovating in this area. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (observing that "[w]e must therefore exercise the utmost care whenever we are asked to break new ground in this field [of substantive due process], lest the liberty protected by the Due Process Clause be

12

subtly transformed into the policy preferences of the Members of this Court" (internal quotation marks and citation omitted)). And to do so would be even less appropriate in this case when we recognize the "heavily subjective nature of [the] asserted right." *See Hawkins v. Freeman*, 195 F.3d 732, 748 (4th Cir. 1999). Plaintiffs would have us recognize a right where there are virtually no objective criteria for assessing how strong the familial ties must be, how short the distance between family and detention must be, or how weak the countervailing governmental interests must be. Like in *Hawkins*, "enforcement of such a right would therefore rest almost entirely upon the subjective judgments of judges applied to widely varying factual circumstances." *Id*. This is just the circumstance about which the Supreme Court advised utmost caution in *Glucksberg*.

Plaintiffs' allegations that they were denied procedural due process fares no better because "[p]rocedural due process applies only to the deprivation of liberty and property interests." *Rockville Cars, LLC v. City of Rockville, Md.*, 891 F.3d 141, 145 (4th Cir. 2018). While the plaintiffs do not allege that any property interest was implicated, they do allege that a liberty interest in "family unity" — self-described as the same interest that formed the basis of their substantive due process claim — was implicated. But this is an interest that we find does not exist. Accordingly, their procedural due process claim must likewise fail.

For the reasons given, we affirm.

AFFIRMED

13