**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 25-1448**

---

AMERICAN ACCEPTANCE CORPORATION OF SC, on behalf of itself and all others similarly situated,

        Plaintiff – Appellant,

    v.

JOHN GIETZ; SHERIFF BRYAN KOON, a/k/a Jay Koon, in his official capacity; SANDRA BLACK; JOEL M. DEASON; JAMES WESTBURY; JESSE LAINTZ; LEXINGTON COUNTY SHERIFF'S DEPARTMENT,

        Defendants – Appellees.

---

Appeal from the United States District Court for the District of South Carolina, at Columbia. Mary G. Lewis, District Judge. (3:24-cv-01099-MGL)

---

Argued: October 23, 2025                         Decided: May 12, 2026

---

Before BENJAMIN, Circuit Judge, FLOYD, Senior Circuit Judge, and Patricia Tolliver GILES, United States District Judge for the Eastern District of Virginia, sitting by designation.

---

Affirmed by published opinion. Judge Giles wrote the opinion, in which Judge Benjamin and Judge Floyd joined.

---

**ARGUED:** Joseph Studemeyer, STUDEMEYER LAW FIRM, P.C., Irmo, South Carolina, for Appellant. Daniel C. Plyler, SMITH ROBINSON HOLLER DUBOSE &

MORGAN, LLC, Columbia, South Carolina, for Appellees. **ON BRIEF:** J. Gregory Studemeyer, STUDEMEYER LAW FIRM, P.C., Irmo, South Carolina, for Appellant. Austin Tyler Reed, Frederick Newman Hanna, Jr., SMITH ROBINSON HOLLER DUBOSE & MORGAN, LLC, Columbia, South Carolina, for Appellees.

———————

PATRICIA TOLLIVER GILES, District Judge:

Appellant American Acceptance Corporation of SC ("AAC") brought a 42 U.S.C. § 1983 claim against the Lexington County Sheriff's Department ("LCSD").[1] The LCSD confiscated two motorcycles in connection with a murder investigation and subsequent prosecution. AAC held a security interest in the motorcycles and claimed LCSD violated its procedural due process rights by retaining its property during the pending criminal investigation without providing AAC notice and an opportunity to be heard. The district court granted LCSD's motion to dismiss. For the reasons set forth below, we affirm.

## I.

## A.

AAC finances the acquisition of motor vehicles and motorcycles. Essentially, AAC purchases the retail installment contracts ("RISCs") that purchasers execute to finance the motor vehicle or motorcycle, and thereby obtains a security interest in the property, or collateral. When a purchaser is in default—either by failing to make a payment or because "the prospect of payment, performance, or realization on the collateral is significantly impaired"—AAC obtains the right to take possession. Joint Appendix ("J.A.") 10.

AAC acquired the RISCs for the two Harley-Davidson motorcycles at issue here. In particular, AAC purchased the RISC that Timothy Harold Brock executed on January

---

[1] The Appellees include the Sheriff's Department; Sheriff Byran "Jay" Koon in his official capacity; LCSD's General Counsel Joel Deason; as well as John Gietz, James Westbury, Sandra Black, and Jesse Laintz, who are also members of the Department. Throughout this opinion, any reference to LCSD includes all Appellees.

30, 2021, to finance his motorcycle. AAC also purchased the RISC that Shane Adam Andrzejewski executed on July 13, 2021, to finance his motorcycle. Both Brock and Andrzejewski titled their respective motorcycles with the South Carolina Department of Motor Vehicles under their names and listed AAC as a lienholder. Additionally, both Brock and Andrzejewski agreed to make monthly payments to AAC and continued to make those payments until October 7, 2022, and November 1, 2022, respectively.

In early October 2022, Brock was shot and killed while riding his motorcycle during a shootout between rival motorcycle gangs. LCSD launched an investigation and collected Brock's motorcycle at the scene as material evidence. On November 8, 2022, Andrzejewski was arrested as a suspect. Two days later, Andrzejewski, along with three others, were charged with murder, conspiracy, and attempted murder related to the incident. On November 8, 2022, LCSD also executed a search warrant and seized Andrzejewski's motorcycle as material evidence pursuant to that warrant. LCSD's seizure of both Brock's and Andrzejewski's motorcycles constituted defaults under the executed RISCs.

LCSD did not notify AAC of the seizure or the location of the motorcycles. Instead, AAC learned of LCSD's seizure of the motorcycles through the news. In December 2022, AAC contacted LCSD's Captain Laintz, "who advised that it would be several years" before AAC could receive the motorcycles. J.A. 11. Captain Laintz then asked two other LCSD officers, Deputies Westbury and Black, to "handle how is appropriate." *Id*. at 33. Neither of these deputies provided further notice or information to

4

AAC.  Subsequently, AAC's counsel requested incident reports for the matter, first by email and then through a Freedom of Information Act ("FOIA") request.

B.

In January 2023, AAC filed a complaint for claim and delivery for each of the motorcycles in the Lexington County Circuit Court.  On February 9, 2023, LCSD's General Counsel, Joel Deason, emailed AAC's counsel, stating:

> Please know these motorcycles are essential evidence in a series of events that produced the criminal charges [against Andrzejewski]. . . .
>
> The law states that if the bikes are even closely related to evidence, LCSD will be allowed to retain possession – See Palmetto State Bank v. English[,] 181 S.C. 69 (1936).  Accordingly, . . . I am asking you to dismiss your complaints against the sheriff so I do not have to prepare responsive motions. . . .
>
> As for [the] FOIA request[,] we respectfully decline to produce requested documents involving Mr. Andrzejewski at this time since related charges are currently pending in the Court of General Sessions.  S.C. Code § 30-4-40(a)(3) exempts the disclosure of information compiled for law enforcement purposes for several reasons[,] [i]ncluding those that would interfere with a prospective law enforcement proceeding or deprive an [i]ndividual of a fair and impartial trial. . . . Accordingly, if you need these records before the charges have been adjudicated, please direct your request to the Solicitor's Office so they can evaluate the disclosure in light of the above.

J.A. 38, 138.  The record does not indicate whether AAC contacted the Solicitor's Office.

In April 2023, Deason notified AAC's counsel that LCSD filed motions to dismiss the suits for insufficiency of process.  On July 17, 2023, the circuit court held a hearing on the matter, during which it noted:

> I can tell you that there's no way that I would order seized evidence to be released on a claim and delivery action while the case is still pending.  It may present a hardship and it always does, particularly where you have innocent parties involved.  But that's the nature of the abyss.  And with a – this being

5

a murder case, there's no way that I would interject myself into the litigation and order the state to release evidence. And that's without analyzing all the rules that you all have cited except that Rule 4(d)5 that requires service on the attorney general.

J.A. 45. Thereafter, the circuit court dismissed AAC's state court actions for improper service with leave to cure the service defects.

On February 1, 2024, AAC filed its lawsuit in the Lexington County Court of Common Pleas, seeking claim and delivery under state law as well as declaratory, injunctive, and monetary relief under Section 1983. LCSD removed the case to federal court. On March 21, 2025, AAC filed an amended class action complaint. On April 4, 2024, LCSD moved to dismiss the amended complaint for failure to state a claim. On May 19, 2024, AAC moved for summary judgment. On July 17, 2024, the district court stayed the matter until ruling on the pending motions.

On March 26, 2025, the district court issued a memorandum opinion and order granting LCSD's motion to dismiss AAC's procedural due process claim. The district court concluded that the initial seizure of the motorcycles was lawful under the Fourth Amendment, and AAC's protected property interest in the motorcycles "must necessarily give way" to a defendant's "constitutionally guaranteed access to evidence." J.A. 142-43. The court further remanded the claim and delivery claims to state court. AAC timely appealed.

II.

6

We review the district court's grant of a motion to dismiss for failure to state a claim *de novo*, focusing "only on the legal sufficiency of the complaint" and "tak[ing] the facts in the light most favorable to the plaintiff." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)).

## A.

### 1.

The Due Process Clause of the Fourteenth Amendment prevents states from "depriv[ing] any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV. To establish a Section 1983 procedural due process claim, a claimant must allege: "(1) that it had a protected property interest; (2) of which [a government party] deprived it; (3) without due process of law." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 146 (4th Cir. 2018). Typically, due process requires notice and the opportunity to be heard. *Id.*

As an initial matter, the Court must determine the proper standard for assessing what due process AAC was entitled to given the temporary deprivation of its property during the pendency of a criminal investigation.[2] The parties disagree as to whether the Fourth or the Fourteenth Amendment defines the scope of the process owed to AAC. AAC contends that LCSD violated the Fourteenth Amendment's Due Process Clause by failing to provide

---

[2] The parties do not dispute that AAC, as lienholder, has a property interest in the motorcycles.

AAC with notice and an opportunity to be heard with respect to the retention of the motorcycles. LCSD, however, characterizes this matter as a Fourth Amendment case and avers that its compliance with the Fourth Amendment satisfied due process. For the reasons stated below, we find the Fourth Amendment defines the process that is due.[3]

Under the Fourteenth Amendment's Due Process Clause, the right to notice and a hearing is not limitless. In "extraordinary situations," property may be lawfully seized absent either notice or hearing. *Fuentes v. Shevin*, 407 U.S. 67, 91 (1972) (holding that seizure absent notice or a hearing is permissible where "directly necessary to secure an important governmental or general public interest," "there has been a special need for very prompt action," and the seizure was initiated by a government official "under the standards of a narrowly drawn statute").

Courts have routinely recognized that criminal matters pose unique considerations with respect to due process rights. In *Fuentes v. Shevin*, the Supreme Court acknowledged the "highly important governmental need" of property seizures for criminal investigations, especially in "situations demanding prompt action." *Id.* at 93 n.30. Furthermore, both this Court and other circuits have relied on the Fourth Amendment for guidance as to the proper process that is due for seizure of property in the context of criminal cases. *See Smith v. Travelpiece*, 31 F.4th 878, 884 (4th Cir. 2022) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975)) ("[T]he Fourth Amendment was tailored explicitly for the criminal justice

---

[3] The Fourth Amendment is made applicable to states by way of the Fourteenth Amendment.

system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases."); *see also Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)) ("Prior notice is not, however, absolutely necessary so long as other procedures guarantee protection against erroneous or arbitrary seizures." (citing *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 605-06 (1974)).[4]

In *Rodgers v. Knight*, the Eighth Circuit addressed an analogous challenge to law enforcement's retention of seized property for a criminal investigation. 781 F.3d 932, 941 (8th Cir. 2015). Ultimately, the court concluded that "'[w]hen seizing property for criminal investigatory purposes, compliance with the Fourth Amendment satisfies pre-deprivation procedural due process' . . . [and w]here retention of evidence is justified by pending charges or an arrest warrant, no further process is required." *Id.* (quoting *Walters v. Wolf,* 660 F.3d 307, 314 (8th Cir. 2011); *see also Serio v. Balt. Cnty.*, 115 F. Supp. 2d 509, 517 (D. Md. 2000) (finding no procedural due process violation where law enforcement officers lawfully seized and retained the plaintiff's weapons during a criminal investigation).

In accordance with our well-established precedent that the Fourth Amendment has been "thought to define the 'process that is due' for seizures of person or property in criminal cases," and the reasoning in *Rodgers*, we find that the Fourth Amendment applies

---

[4] Likewise, the Supreme Court has implicitly endorsed the procedural protections under the Fourth Amendment. *Fuentes,* 407 U.S. at 93 n.30 (stating that "our decision today in no way implies that there must be opportunity for an adversary hearing before a search warrant is issued," especially where "the Fourth Amendment guarantees that the State will not issue search warrants merely upon the conclusory application of a private party.").

in this case as well. *Travelpiece*, 31 F.4th at 884. This Court finds no reason to change the analysis simply because the property interest belongs to a third party.

2.

Having established that the Fourth Amendment guides our analysis, we find no due process violation exists here. The parties agree that the motorcycles were properly seized under the Fourth Amendment's warrant requirement with respect to Andrzejewski and pursuant to a warrant exception with respect to Brock. Given the connection of the motorcycles, LCSD had a reasonable basis to retain them as evidence for Andrzejewski's pending charges and Brock's murder investigation. LCSD's actions were also in accordance with South Carolina law providing that "[a] custodian of evidence must preserve all physical evidence . . . related to the conviction or adjudication of a person," including for murder. S.C. Code Ann. § 17-28-320(A).

We do not dispute that AAC has a legitimate property interest in the two motorcycles here. However, to require further due process in this instance would impede South Carolina's ability to carry out its public interest duties to investigate crimes in a prompt manner. It would further permit future third-party lienholders to intervene in and delay criminal investigations by attempting to take possession of critical physical evidence. Accordingly, because the motorcycles were lawfully seized under the Fourth Amendment and retained as evidence in an active criminal investigation, no further process was due.

3.

AAC makes two counterarguments. We find both unpersuasive. First, AAC invokes the Supreme Court's decision in *City of West Covina v. Perkins* to argue that LCSD

10

owed it notice and an opportunity to be heard after the initial seizures, even if the seizures were "pursuant to warrant." 525 U.S. 234, 240-41 (1999). *Perkins* is not helpful to AAC. There, police executed a search warrant at a residence in connection with an investigation into a former boarder suspected of homicide. *Id.* at 236. Later, the homeowner and his family sued, claiming police violated their Fourth and Fourteenth Amendment rights in connection with the search and subsequent seizure of property. The Supreme Court noted that the issue before it concerned "the obligation of the State to provide fair procedures to ensure return of the property when the State *no longer has a lawful right to retain it*," so that "the owner can pursue available remedies for its return." *Id.* at 241 (emphasis added).

Here, both motorcycles were material evidence in a criminal investigation and ongoing prosecution. Under South Carolina law, LCSD had not only a right, but an obligation to retain them. *See* S.C. Code Ann. § 17-28-320(A) ("[A] custodian of evidence must preserve all physical evidence and biological material related to the conviction or adjudication of a person").[5]

"The general rule is that seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated." *United States v. Farrell,* 606 F.2d 1341, 1343 (D.C. Cir. 1979) (quoting *United States v. LaFatch,* 565 F.2d 81, 83 (6th Cir. 1977)); *see also AmeriSource Corp. v. United States*, 525 F.3d 1149, 1154 (Fed. Cir. 2008) ("Once the government has lawfully seized property to be used as evidence in a criminal prosecution, it has wide latitude to retain it so long as the investigation

---

[5] Essentially, AAC is asking this Court to rewrite South Carolina law.

11

continues, regardless of the effect on that property."). AAC's challenge concerns LCSD's actions during the investigation, while LCSD still had a "lawful right to retain" the property. [6]   Therefore, *Perkins* is not dispositive for the facts before us.

Second, AAC relies on certain language in *Krimstock v. Kelly* to bolster its arguments.   464 F.3d 246 (2d Cir. 2006).   There, the Second Circuit noted that "[a] prosecutor's right to retain material evidence necessary for trial does not mean that prosecutors can decide unilaterally that an automobile is material and its retention necessary." *Id.* at 255. *Krimstock* involved a similar Section 1983 action challenging New York City's post-seizure retention of vehicles being held as evidence. *Id.* at 248. But the court's reasoning emphasized "[t]he particular importance of motor vehicles . . . as a mode of transportation and, for some, the means to earn a livelihood." *Id.* at 253 (citation omitted). Here, the circumstances for AAC—a third-party lienholder—are far less urgent, even if its property interest is valid. In fact, *Krimstock* recognized that the other circumstances of the case weighed in the government's favor nonetheless, given the government had probable cause for its seizure and an "interest in marshaling evidence." *Id.* at 255. Both factors exist here. Accordingly, while *Krimstock* may delineate some

---

[6] *Perkins*, 525 U.S. at 241.  We recognize that district courts in this Circuit, as well as other circuits, have required notice and a hearing in instances where law enforcement planned to dispose of or destroy physical evidence *after* an investigation concluded.  That was not the case here.  Thus, we find no need to address those circumstances. *Serio*, 115 F. Supp. 2d at 516 (finding "no denial of due process" during a pending investigation where "[t]he County has not disposed of Serio's weapons or proposed to do so"); *Cooper v. City of Greenwood*, 904 F.2d 302, 304-06 (5th Cir. 1990) (finding a due process violation where municipality seized and later sold felon's firearms after conviction without providing notice or a hearing).

limitations to law enforcement's right to retain evidence, those limitations do not apply here. Even if this Court adopted the Second Circuit's reasoning in *Krimstock*, LCSD's actions were properly justified by an "interest in marshaling evidence" for a pending murder investigation.[7]

---

[7] *Id.* at 255. On December 8, 2025, AAC submitted a supplemental filing pointing this Court to the Third Circuit's recent decision in *Honda Lease Trust v. Malanga's Automotive*. 152 F.4th 477 (3rd Cir. 2025). In *Honda Lease*, a lessor brought suit against a towing company and a municipality, alleging they violated its due process rights after law enforcement officers seized the vehicle of a lessee without notifying the lessor of the seizure. *Id.* at 482. The Third Circuit reversed the district court's summary judgment opinion on the grounds that the city's towing policy violated the Fourteenth Amendment's Due Process Clause. *Id.*

However, *Honda Lease* is consistent with this Court's opinion here and does not aid AAC. First, unlike the motorcycles seized by LCSD, the *Honda Lease* vehicle was not seized and held as evidence in a pending criminal investigation; rather, it was seized as abandoned property. *Id.* at 485. More importantly, in its analysis of the Fourth Amendment claims, the Third Circuit made clear:

> [W]e have held, as a matter of due process and the Fifth Amendment's Takings Clause, that property legally seized as part of a criminal trial must be returned after the end of a trial unless it is contraband or subject to forfeiture. *See United States v. 608 Taylor Ave., Apartment 302, Pittsburgh, Pa.*, 584 F.2d 1297, 1302 (3d Cir. 1978) ("[T]he government may not[,] by exercising its power to seize, effect a [d]e facto forfeiture by retaining the property seized indefinitely."); *Frein v. Pennsylvania State Police*, 47 F.4th 247, 252-53 (3d Cir. 2022) ("If the government wants to keep the property after the conviction becomes final, it needs some justification."). ***In those cases, we explained that the government may lawfully seize property if some Fourth Amendment justification exists***, *see 608 Taylor Ave.*, 584 F.2d at 1302, *Frein*, 47 F.4th at 252, but this justification can run out, *see id.* at 253.

*Honda Lease*, 152 F.4th at 489 (emphasis added). Accordingly, the Third Circuit's analysis in *Honda Lease* is congruous with this Court's reasoning here.

13

Accordingly, the district court properly found no plausible claim for a due process violation.[8]  On that basis, we affirm.

B.

Before concluding, we briefly address AAC's contention that the district court improperly considered material outside of the complaint in resolving the motion to dismiss. First, AAC argues the district court erred by stating that it considered "the motion, the response, the reply, the record, and the applicable law" on a motion to dismiss.  J.A. 137. We find no impropriety here.  It is undoubtedly the province of the district court to consider the parties' briefings and applicable law when reviewing a motion to dismiss.  Courts need not rely on a complaint for legal conclusions.  *Giarratano*, 521 F.3d at 302.

Second, AAC argues that the district court erroneously referred to the fact that Brock was riding his motorcycle at the time of his murder because it was not stated in the complaint.  However, one exhibit attached to the amended complaint expressly included a statement from LCSD to AAC stating, "[i]t is believed that the rider of one bike shot and killed a person riding the other," with a citation to a news article directly referencing the fact.  J.A. 38; *see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (2016) (stating the court may "consider documents that are explicitly incorporated into the complaint by

_____

[8] AAC further argued in oral argument that the claim and delivery suit in state court did not constitute an opportunity to be heard because the case was never heard on the merits.  However, "[d]ue process does not, of course, require that the defendant in every civil case actually have a hearing on the merits." *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971).  Accordingly, it is clear AAC received, at minimum, an opportunity to be heard.

14

reference . . . and those attached to the complaint as exhibits.").  Accordingly, the district court properly considered the pleadings in rendering its decision.  We find no error.

### III.

For the reasons set forth in this opinion, we affirm the district court's order granting the defendants' motion to dismiss.

*AFFIRMED.*